WILLIAM H. TRACY AND JOHN B. BALESTIER, PLAINTIFFS IN ERROR v. SAMUEL SWARTWOUT.

Certain casks of sirup of sugar-cane were imported into the port of New York, and the agent of the importers offered to enter them, and bond the duties at the rate of fifteen per cent. ad valorem; but the collector, acting in entire good faith, under instructions of the secretary of the treasury, refused to allow the sirup to be entered, unless bonds were given at the rate of three cents per pound. The consignee refused to give the bonds for the higher duty, and the sirup remained in the possession of the collector for a long time, by which its value was greatly deteriorated. On the trial of the cause, evidence was offered, and rejected by the court, to show that the importer was not able to give bonds for the higher duty; but this inability was not made known to the collector at the time they offered to make the entry. The treasury department became afterwards satisfied that the legal rate of duties was fifteen per cent. ad valorem, and on the payment of the duty at that rate, the sirup was delivered to the owner. An action was instituted against the collector, to recover damages for the loss sustained by the deterioration of the sirup, and a verdict, in conformity with the charge of the court, was given for nominal damages only.

The circuit court properly rejected the evidence of the plaintiff's inability to give the bond demanded by the collector. The fact of inability ought to have been made known to the collector, at the time the bond was required.

The secretary of the treasury is bound by the law; and although in the exercise of his discretion he may adopt necessary forms and modes of giving effect to the law; yet, neither he nor those who act under him, can dispense with, or alter any of its provisions. It would be a most dangerous principle to establish, that the acts of a ministerial officer, when done in good faith, however injurious to private rights, and unsupported by law, should afford no ground for legal redress.

Where a ministerial officer acts in good faith, he is not liable to exemplary damages for an injury done; but he can claim no further exemption, where his acts are clearly against law.

The collector has a right to hold possession of imported goods until the duties are paid, or secured to be paid, as the law requires. But, if he shall retain possession of the goods, and refuse to deliver them after the duties shall be paid, or bond given, or tendered, for the proper rate of duties; he is liable for the damages which may be sustained by this refusal.

A court may not only present the facts proved, in their charge to the jury, but give their opinion, as to those facts, for the consideration of the jury. But, as the jurors are the triers of facts, such an expression of opinion by the court should be so guarded as to leave the jury free in the exercise of their own judgments. They should be made distinctly to understand, that the instruction was not given as a point of law, by which they were to be governed; but as a mere opinion, as to the facts, and to which they should give no more weight than it was entitled to.

The correctness of every charge must depend upon the phraseology used by the court; and, of course, but little aid, from adjudicated cases, can be expected in a case like the present.

The collector, in point of law, had no right to demand a bond for more than the duties at the rate of fifteen per cent. ad valorem; and the plaintiffs were under no obligation to give bond in a greater sum. And the fact of having failed to give such illegal bond was not a circumstance which should have lessened the plaintiff's damages: nor, in point of law, should the good faith in which the defendant seems to have acted, exempt him from compensatory damages.

On the argument of the case, the counsel for the defendant objected to the proceeding by writ of error, alleging that, as the jury had found for the plaintiffs in the circuit court, the proper course would have been to move the court for a new trial, on the ground of the insufficiency of the damages; and that error would not lie, as this was no more than an application to the court for a new trial on that ground.

By the Court. The objection that the proper remedy of the plaintiffs was by a motion for a new trial, and that the question now made on this writ of error, is. substantially a motion for a new trial, seems not to be well founded. The amount of damages found by the jury are only referred to, as showing that they considered their verdict as controlled by the direction of the court.

Some personal inconvenience may be experienced by an officer who shall be held responsible in damages for illegal acts done under instructions of a superior; but, as the government in such cases is bound to indemnify the officer, there can be no eventual hardship.

IN error to the circuit court of the United States for the southern district of New York.

This action was commenced by the plaintiffs in error in the superior court of the city of New York, and on the suggestion of the defendant, that the suit was instituted against him for acts done by him under the revenue laws, as collector for the district of the city of New York, and praying that the same should be removed to the circuit court of the United States for the southern district of New York; the cause was so removed to October term, 1833.

The declaration was in trover for certain casks of sirup of sugar-cane.

Special counts were added, setting forth that the plaintiffs had imported certain casks of sirup of sugar-cane, on which the duty was fifteen per cent. ad valorem; that the plaintiffs were ready and willing, and offered to enter the goods at the legal rate of duty, and to give bonds accordingly, and to do every act necessary to making such entry. Nevertheless, the defendant, although he declared himself satisfied with the sufficiency of the offer or tender of the plaintiffs, except 'as to the amount of duties, for which he required bonds in a much larger amount, over three cents per pound, for every pound of said sirup; and, although

defendant then waived any further tender, nevertheless, he re-fused to allow plaintiffs to enter and secure the duties on the sirup at the rate required by law, and refused to deliver the sirup for a long time, over eighteen months, when it was deliv-ered upon payment of the duties, at fifteen per cent. ad valo-rem ; whereby plaintiffs were damaged by the deterioration of the property, &c., stating the damage specially. The defendant pleaded the general issue.

On the trial, it was proved that the goods were consigned by plaintiffs to one F. A. Tracy, of New York, to sell for plaintiffs. That F. A. Tracy, by his attorney, J. S. Carpenter, the wit-ness, offered to enter the goods shortly after the arrival, at fif-teen per cent. ad valorem.

The collector said he had instructions from the department not to permit the entry at less than three cents per pound. The witness adds, " he said he would permit the entry at fifteen per cent. ad valorem, *but should require bonds* at three cents per pound."

Some time after this, Balestier, one of the plaintiffs, arrived in this country, and he went to the collector in company with the witness, E. A. Weeks, and then delivered him the letter set out in the bill of exceptions, making an offer of bonds at fifteen per cent. ad valorem, inquiring whether a formal tender of a bond or bonds as aforesaid was required. He exhibited the bills of lading, invoices, &c. The collector said " he could not act, *he could not permit him to enter the goods upon the terms and at the rate of duty mentioned in the letter*, because it was contrary to instructions from the department." " The collector did not refuse an entry to be made, but insisted that the goods should pay a higher rate of duty."

It appeared that the duties demanded were equal, if not greater than the value of the goods ; the consignee would not bond them, and plaintiffs offered to prove that they were unable to furnish bonds at the rate demanded by the collector.

The goods were put in a public store, and remained there a long time ; they were finally delivered to the plaintiffs on their bonds, at the rate of fifteen per cent. ad valorem. " The depart-ment" having in the mean time changed its views of the law of July 14, 1832. Sec. 17

[Tracy and Balestier v. Swartwout.]

After the foregoing evidence had been given, the plaintiffs procured several witnesses to prove that the sirup was worth from eight to ten cents per gallon less, when given up by the collector, than when the bonds were offered, in consequence of necessarily growing acid by standing.

The court charged the jury, "that admitting the merchandise in question to be subject to a duty of only fifteen per cent. ad valorem, yet the circumstances under which the dispute about the rate of duty arose, *ought not to subject the collector to the payment of more than nominal damages ;* that the collector was pursuing what he believed to be his duty, and whatever injury the plaintiffs sustained in not receiving their goods at an earlier day, grew out of their own conduct, in not entering the goods in the manner offered by the collector, at fifteen per cent. ad valorem, taking the bond, however, to secure the payment of three cents per pound ; merely placing the case in a situation to have the question judicially decided as to the rate of duty ; no intimation being given that it would occasion any inconvenience to the plaintiffs, to give the bond so required by the collector." To this charge the plaintiffs' counsel excepted ; and the jury found for plaintiffs six cents. The plaintiffs prosecuted this writ of error.

The case was submitted to the court on printed arguments by Mr. Sedgwick for the plaintiffs in error, and by Mr. Price, district attorney of the United States, for the southern district of New York, for the defendant.

Mr. Sedgwick for the plaintiff presented two points for the consideration of the court :

1st. The plaintiffs had a good cause of action against the collector for damages, actually sustained.

2d. The judge erred in charging the jury as to the rights of the plaintiff.

As to the first point, it was argued that the doubts which previously prevailed as to the responsibility of the collector for wrong done, in such a case as the present, no longer existed. The great principle is stated by Chief Justice Spencer, in Bartlett v. Crozier, (15 John. 254,) " whenever an individual has sustained an injury by the mis-feasance or non-feasance of an of-

[Tracy and Balestier v. Swartwout.]

ficer who acts or omits to act, contrary to his duty, the law affords redress." Cited also, 8 Wentworth 462; Olney v. Arnold, 3 Dalt. 308. In Conard v. The Pacific Ins. Company, 6 Peters 281, the precise doctrine contended for is laid down by the court, that the possession of the collector is a mixed possession, for the benefit of the owner and the government, and " that when the duties are paid or tendered, if the collector retains the goods, it is a tortuous conversion."

There is nothing in this case which should protect the collector from the operation of this rule. The judge seems to suppose that the plaintiffs unnecessarily involved themselves in the situation in which they were placed; that they might have given bonds for the duties as claimed. But if this were so, still they had a right to refuse giving bonds for more than the actual duties; and they had, on tendering such bonds, a full right to the goods; and the detention of them by the collector, afterwards, made him responsible.

But the facts of the case do not authorize any charge against the plaintiffs. An offer was made of the actual duties; and it was, in the opinion of the attorney of the consignee, doubtful whether the goods would have sold for the duties claimed. Evidence was offered to prove the inability of the plaintiffs to procure bonds for the amount of the claimed duties, but this was not permitted. The communication of this would not have induced the collector to change his course.

It is said the loss of the plaintiffs arose from not having entered the goods, in the manner offered by the collector, at fifteen per cent. ad valorem; and giving bonds at the higher duty. But the offer is denied, and if it had been made, it would not diminish the plaintiffs' claims in this case. But the offer was to allow an entry at fifteen per cent. when bonds for three cents per pound were insisted upon; and this is the grievance: for the goods could not be obtained until these bonds were afterwards given. But suppose a party, under such circumstances, could give a bond; how is it possible that a man could be *bound* in law to give a bond which the law says he ought not to pay? If lawyers can surmount this paradox, merchants would be very apt to find, in the uncertainty of all legal disputes, a substantial reason against

[Tracy·and·Balestier v. Swartwout,]

signing a bond, and trusting to law for avoiding it afterwards. It has been shown that the plaintiffs had a clear cause of action to recover their actual damages; which, in point of fact, amounted to a large sum of money.

II. The next inquiry is, whether his honor the judge ·misdirected the ·jury.

It is submitted to the recollection of the judge who tried this cause, that after he expressed an opinion that the case of the plaintiffs was one of *damnum absque injuria*, as the bonds might have been given, an offer was made to prove inabilty ; which was rejected by the court, no notice of this having been given to the collector. The jury were, therefore, not addressed by the counsel on the question of damages.

The ·court will, however, look only at the bill of exceptions.

The inquiry is, whether the exception here is as to matter of law or matter of fact. Exceptions are doubtless confined to matters of law, and extend "to every case in which the judge, in his directions or decisions, misstates the law." ( 3 Black. Com., 372.) The question on this point ought to be decided with reference to the impression which the charge was calculated to make upon the jury ; and if they gave their verdict in compliance with what they had reason to suppose the judge charged the law to be, and in consequence of that charge ; the verdict ought to be set aside. The judge charged the jury, that the circumstances under which the dispute about the rate of duty arose, *ought not* to subject the collector to the payment of more *than nominal damages.*

It might be supposed that the judge, by admitting the case to be one of nominal damages, plainly intimated that the *law* was with the plaintiffs. But it is submitted, that the idea which the jury must have received, was that the right of the case, in point of law, was with the defendant. They always regard a verdict of six cents as mere matter of form ; and so it is in point of fact, unless it be·a case taken out of the general rule as to costs by a special provision of the statute. The judge declared that the plaintiffs ought not to recover, under the circumstances of the case. The jury must have understood that it was their duty to render a verdict for nominal damages. They most assuredly

did, in point of fact, render their verdict, because they considered themselves bound to do so by the charge of the judge.

His honor the judge proceeded to state the principal circumstances on which his opinion rested, and the first was that the collector was pursuing what he believed to be his duty. This was a good reason why we should not receive smart-money, or any thing beyond our actual damages; but the jury must have supposed, that this circumstance, taken in connexion with the fact, that if bonds had been given for the amount claimed by the collector, the obligors might have defended themselves against the suit on those bonds, constituted a good defence in this suit against the recovery of any thing but nominal damages. Both these circumstances, especially that relating to the *quo animo* of the collector, were such as would naturally give rise to a question of law which very naturally and necessarily presents itself; viz.: does the law in such a case allow a recovery against an innocent collector? The jury must have seen that this was a question of law; and when the judge said the plaintiffs ought not to recover, it was equivalent to saying that they ought not in judgment of law to recover.

If we consider the proper province of the court and jury respectively in this case, the error of the charge will be apparent.

The questions for the court were, 1st, whether the *bona fides* of the collector was a defence; 2d. Whether the right of an obligor on such bonds to contest the duties, makes it the duty of the party to give the bond; or in case of his omission, deprives him of his action? 3d. The rule of damages, viz: Whether we were to recover for any difference in the market at the respective periods of the offer to bond, and the delivery of the property; or only for the deterioration and necessary leakage.

The question for the jury was, what was the amount of damages according to the rule which the court should lay down. In consequence of the opinion of the judge, expressed to the counsel, they did not sum up. The court told the jury they ought to find nominal damages; in short, that was their rule of damages, and of course, they had nothing to inquire about; and so they understood it, for they rendered their verdict immediately.

It appears to follow, that the charge of the judge was, in point

[Tracy and Balestier v. Swartwout.]

of fact, what the jury understood it to be, a charge as to the law; and not as it is now interpreted, an opinion upon the facts of the case.

But whether it was so in fact, or was so understood by the jury, to be a charge on the law; in either case, the verdict and judgment must be set aside.

Mr. Price, for the defendant, contended that the only question in the case, as it is presented by the bill of exceptions, is the relevancy of certain evidence. The plaintiffs had not made a case in the declaration to which the evidence would apply; and it was, therefore, impertinent, and was properly rejected. It is, however, agreed, that the charge of the court shall be open to examination.

After an examination of the pleadings, with a view to show that the charge of the court was entirely correct on the questions raised by them, as well as on the facts of the case; he argued that the judgment in favor of the plaintiffs ought not to be reversed.

1. The plaintiffs had already a verdict in their favor; and it is not competent for them upon a writ of error to disturb a verdict in which the defendant acquiesces.

2. The evidence offered by the plaintiffs was properly overruled by the court; and properly rejected.

3. The charge of the circuit court was in every respect correct.

4. If the cause should be remanded for another trial, there is nothing apparent on the record which would place the plaintiffs in a more favorable position than they held on the first trial.

On the first point, that as the plaintiffs have had a verdict in their favor, it is not competent to them to prosecute a writ of error; it was argued that this is essentially an application for a new trial. Having already obtained a verdict, no question on the amount of the verdict can be raised upon a writ of error. That was exclusively a question for the court below. If the damages assessed by the jury were insufficient, an application should have been made for a new trial. The refusal of the court to grant this is not the subject of a writ of error, 5 Cranch 11, 187; 4 Wheat.

213: and in the circuit court, a new trial was moved for and refused. Will this court correct the error of the circuit court in refusing a new trial? An appellate court will render such a judgment as ought to have been rendered by the inferior court. If the circuit court would not allow the plaintiffs to speculate on the chance of heavier damages, this court will not do it.

A new trial is never granted for inadequate damages, but under special circumstances; and still less will this court do what will be entirely equivalent to a new trial, by awarding a *venire de novo*. Cited on this point, Graham on New Trials 411, 450; Hayward v. Morton, 2 Strange 940; Barker v. Dixie, 2 Strange 1150; Beardman v. Carrington, 2 Wills 244.

The jury, in assessing the damages, must have taken into consideration the amount of the injury which the plaintiffs had sustained, by reason of the illegal conduct of the defendant. The counsel for the plaintiff admitted, on the trial, that the defendant acted in good faith, and under instructions from the treasury department. It was therefore a case in which the jury were limited to damages actually sustained, fully proved to them; and they could not give damages as a penalty.

2d. The evidence offered by the plaintiffs was properly overruled. No notice of the difficulty or inconvenience to the plaintiffs, in entering into the bonds, was given to the collector. Such evidence could only be admitted under a special consent, if admitted at all. A party is not to be brought into court to answer to matters of which he is not apprized; of which he has not had notice, that it was incumbent upon him to inform himself.

3d and 4th. The charge of the court was correct; and if the cause shall be remanded, there is nothing in the record which will place the plaintiff in a better position than on the former trial.

Upon these points the counsel for the defendants urged that, on a new trial, no other result than that which had occurred could be expected. If the evidence offered was properly refused, there would be an end of the question between the parties, and the verdict would stand. If it was to be admitted, as the charge of the court was correct, no other result would follow.

The liability of the goods for duties is not denied; the rate of

[Tracy and Balestier v. Swartwout.]

the duties payable was the only question; and had the plaintiffs accepted the proposal of the collector to give bonds for the duty claimed, protesting against the amount of the claim, no injury would have been suffered. They would have had possession of their goods; and as the claim for the higher duties was afterwards abandoned, no loss would have arisen.

The plaintiffs cannot, under any circumstances, sustain a recovery in this action. They have not shown, in themselves, possession, or property in the goods. The collector was lawfully in possession, under the laws of the United States; and he had a right to retain possession until he was relieved of the custody by the party claiming the same, and having conformed to the law. He did no act, while in possession, which would render him liable as a trespasser. His possession was that of a bailee; and a bailee is never responsible for the natural and inevitable deterioration of the subject bailed. But he was not even a bailee, but the servant of the government, bound to execute legal orders. Acting in good faith, and under orders, how can he be liable personally?

That question is easily answered. 1. He had the possession lawfully in the first instance; we say, merely as the servant of the government.

2. He has done no intermediate act, which could retrospectively vary the character of his possession. The doctrine of trespass *ab initio* is a doctrine arising out of equitable principles; and was intended to give a party advantages which he could not have under the strict technical rules of pleading. It was intended to permit a party under the general form of a declaration in trespass, to give evidence of matters which it would be difficult or hazardous to plead specially. Thus far, it is a substitute for a special action on the case. But let it be remembered that it is not pretended that the plaintiffs, in this instance, should have brought their action in trespass; on the contrary, it is admitted that the action on the case is their only remedy: but there is the further consideration, that in an action of trespass, the lawful possession of the defendant is a pre-requisite, before he can be made a trespasser, ab initio. It must be the possession of the principal, and not the possession of the servant.

If a man directs his servant to take my goods, and the servant seizes them, it is clear that they are both trespassers: but if goods are delivered to a man to keep, and he destroys these goods, he may be a trespasser by relation; but, if the act was committed by his servant, without his order or authority, it is the direct trespass of the servant, who alone is liable. If goods are delivered to the master to keep, and they are kept so negligently that the goods are lost, the master is responsible, in some form of action, for his negligence. If the master intrusted the custody of the goods to the servant, and they were lost through the negligence of the servant, the master must be called on for redress.

The collector is a mere servant or clerk, and cannot be rendered liable to a third person for any negligence or omission for which any other servant or clerk would not be responsible. The act organizing the treasury department, September 2, 1789, would seem to put this question out of all doubt. It is there made the duty of the secretary of the treasury " *to superintend the collection of the revenue;*" thus, in the broadest terms, subjecting every person connected with the collection of the revenue, to the supervision and control of the head of the treasury department. And here let it be recollected, that the collector was, in this instance, acting under the instructions of the treasury department.

If any thing further were wanting to show the merely subordinate character of the collector, it is made manifest from the circumstance, that it was found necessary expressly to authorize by law the collector to act through a deputy, (act to regulate the collection of duties, &c., March 2, 1799, 3 Laws U. S. 157, § 22,) and by a subsequent law, (act of March 3, 1817, § 7,) a collector can only appoint deputies, with the approbation of the secretary of the treasury.

The collector cannot appoint inspectors of the customs, without the approbation of the treasury department; (act further to provide for the collection of duties, &c., March 3d, 1815, § 3,) and " *the number and compensation of clerks to be employed*" in his office, may be limited and paid by the secretary of the treasury. (Act of March 7, 1822, further to establish the compensation of officers of the customs, &c., § 15.)

[Tracy and Balestier v. Swartwout.]

Hence the law does not regard him as the agent of the government, but as a mere subaltern, or servant of the secretary of the treasury; who is the proper and immediate agent of the law " to superintend the collection of the revenue."

In reply to some points of the opening argument of the plaintiffs' counsel, it was submitted to the court, that the decision in Bartlet v. Crozier, 15 John. Rep. 254, was reversed; and the opinion of Chancellor Kent was adopted by the court of error of New York, 17 John, Rep. 439. The authority in 8 Wentworth's Pleading, 462, is directly in conflict with the case of the plaintiff in error. The declaration in that case was against the collector for *maliciously intending* to injure the plaintiff by preventing his exporting certain goods, &c.

The counsel also referred to Olney v. Arnold, 3 Dallas 308; which does not meet the present case. It is not pretended but that cases may occur in which an action may be sustained against a collector; but the case of Olney v. Arnold decides no principle whatsoever.

It is asked if the plaintiff was bound to give bonds which the law did not authorize, and then set up a defence to a suit on these bonds. It would be difficult to establish that the law did not authorize the taking of the bonds. The condition of the bond to be given under the 65th section, is always to pay a sum certain, on the amount of the duties to be ascertained as due and arising on certain goods, &c. This shows the authority of the collector to take the bond.

The law says that, to obtain goods imported, the duties must be paid in cash, or a bond given; and until a judgment is passed on the bond, all errors in the liquidation of the duties may be corrected. 3 Laws U. S. 198, sect. 66; ex parte Davenport, 6 Peters 661.

Mr. Sedgwick, in reply to the position that the plaintiffs cannot disturb a verdict in their favor in which the defendant acquiesces, stated: If by this it be meant to say, as in the authorities referred to, that the refusal of a new trial because against evidence, is not ground for error, that is not denied. If it be meant to say, that if the judge charges contrary to law, and plain-

tiff recovers six cents, when, if a right charge had been given, he might and probably would have recovered $3,000, and an exception be taken, that error cannot be brought; the proposition is too manifestly erroneous to require refutation.

It was stated in the argument in chief, that it was a paradox to say " the plaintiffs were bound to give a bond which the law did not authorize." This has been answered by saying that the collector was authorized to take the bond, because the condition in it is to pay duties to be ascertained, &c. This case strongly exemplifies the unsoundness of the argument.

The duties at fifteen per cent. ad valorem amounted to less than one-sixth part of the duties at three cents per pound. The proposition of the defendant's counsel is, that as the collector has a right to require a bond for the duties to be ascertained, it is what he may estimate the duties to be. In other words, that it is the same thing for the collector in this case to demand a bond at three cents per pound, or at fifteen per cent. ad valorem.

If this be so, then it would make no difference if the collector demanded a bond for duties one hundred times greater than the real duties, supposing him to act innocently and by order of the department.

If the proposition laid down by the defendant's counsel be sound, why would not the collector be equally justified in cases of malice? It might be said the malice could do no harm, because the bond is only for such duties as may be ascertained. The mischief is precisely the same in both cases.

But to take the present case. The claim of the collector is matter of substance, and not of form. It may be ruinous.

It is the duty of the collector to endorse the estimated amount upon the entry. He then requires a sufficient security; and a bond in a penal sum sufficient to cover the estimated duties, and generally twice their amount. The surety, before signing the bond, of course examines the entry to see what he may be called upon to pay. Finding that the claim against him will be for the duties according to the principle assumed by the collector, he must decide beforehand to pay them or to contest the bond. If he pays them, he must take his chance of recovering them back. The defendant's counsel will not pretend he should be subjected to this, for

[Tracy and Balestier v. Swartwout.]

he says that in that case he could not recover them back. But he must defend to the bond. He cannot do this without the inconvenience of being denied a credit at the custom-house during the controversy ; which may last till all his credit is gone.

But it is not necessary to go thus far. The owner has this unanswerable objection, that he ought not to be required to give a bond in an unreasonable penalty ; such a bond, indeed, as he may not be able to give. The collector has a right to actual and valid security for the *estimated duties,* and to make it sure for the amount named on the penalty of the bond. He has a right to require sureties, amply able to pay that amount ; and that is all. Now suppose the duties to be in fact $500, he may ask security in $1,000. Suppose, instead of this, he estimates the duties, without any fault in the importer, and from a wrong assumption as to the rate of duties, at $5,000 ; and demands security in $10,000.

Mr. Justice McLEAN delivered the opinion of the Court.

This case is brought into this court by a writ of error to the circuit court for the southern district of New York. The suit was prosecuted in that court to recover damages from the defendant, who, as collector of the customs, had refused to allow the plaintiffs to enter and receive the payment of the lawful duties, on certain casks of sirup of sugar-cane ; which they had imported into the port of New York.

It is admitted that the law imposed no more duty on the article than fifteen per cent. ad valorem ; although the collector, acting under the instructions of the Secretary of the Treasury, required bond for the payment of the above duty, or, should it be required, a duty of three cents per pound. No bond was given, and the sirup remained in the possession of the collector for a long time ; by which means its value was greatly deteriorated.

The question for consideration arises out of a bill of exceptions, in which the evidence is stated at large ; showing the quality of the sirup, the number of gallons imported, and the refusal of the defendant to take bond for the fifteen per cent. ad valorem duty.

It was admitted by the counsel of the plaintiffs, that the de-

[Tracy and Balestier v. Swartwout.]

fendant acted throughout with entire good faith; and under instructions from the treasury department.

The plaintiff's counsel offered to prove that they were unable to give bonds for duties at three cents per pound; though they did not state that fact, to the defendant, at the time they offered to make the entry.

The court overruled this testimony, and instructed the jury, " that, admitting the merchandise in question was only subject to an ad valorem duty of fifteen per cent., yet the circumstances under which the dispute about the rate of duties arose, ought not to subject the collector to the payment of more than nominal damages; that the collector was pursuing what he believed to be the true construction of the law; and whatever injury the plaintiffs may have sustained in not receiving their goods at an earlier day, grew out of their own conduct in not entering the goods in the manner offered by the collector, at fifteen per cent. ad valorem, taking the bond, however, to receive the payment of three cents per pound, if such should be the legal rate of duties demandable; merely placing the case in a situation to have the question judicially decided, as to the rate of duty, no intimation at the time being given that it would occasion any inconvenience to the plaintiffs to give the bond so required by the collector."

Under this instruction the jury found a verdict for six cents damages and six cents costs.

There can be no doubt that the circuit court decided correctly in overruling the evidence of inability in the plaintiffs to give the bond demanded by the defendant. The materiality of this evidence is not perceived; and if it had been material, it ought not to have been received; unless the fact of inability had been made known to the defendant at the time the bond was required.

In the argument, objections were made by the defendant's counsel, to the sufficiency of the counts in the declaration; but these do not necessarily come before us in the present posture of the case; and should the judgment of the circuit court be reversed and the cause remanded for further proceedings; if the pleadings be deemed defective, the parties, with the leave of the circuit court, may amend them.

The collector of the customs is a ministerial officer: he acts

under the instructions of the secretary of the treasury, who is expressly authorized to give instructions, as to the due enforcement of the revenue laws.

Do these instructions, when not given in accordance with the law, afford a justification to the collector, or exonerate him from the payment of adequate damages for an injury resulting from his illegal acts?

The circuit court in their charge to the jury, did not consider these instructions as a justification to the defendant; and in this they were unquestionably correct.

The secretary of the treasury is bound by the law; and although in the exercise of his discretion he may adopt necessary forms and modes of giving effect to the law : yet, neither he nor those who act under him, can dispense with, or alter any of its provisions. It would be a most dangerous principle to establish, that the acts of a ministerial officer, when done in good faith, however injurious to private rights, and unsupported by law, should afford no ground for legal redress. The facts of the case under consideration, will forcibly illustrate this principle. The importers offer to comply with the law, by giving bond for the lawful rate of duties; but the collector demands a bond in a greater amount than the full value of the cargo. The bond is not given, and the property is lost, or its value greatly reduced, in the hands of the defendant. Where a ministerial officer acts in good faith, for an injury done, he is not liable to exemplary damages; but he can claim no further exemption, where his acts are clearly against law.

The collector has a right to hold possession of imported goods until the duties are paid or secured to be paid, as the law requires. But, if he shall retain possession of the goods, and refuse to deliver them after the duties shall be paid, or bond given, or tendered, for the proper rate of duties, he is liable for the damages which may be sustained by this refusal. On the part of the defendant it is insisted that the charge of the circuit court was on the facts of the case, and was limited to an expression of an opinion on those facts, without any direction as to any matter of law.

A court may not only present the facts proved, in their charge

to the jury.; but give their opinion as to those facts, for the consideration of the jury. But, as the jurors are the triers of facts, such an expression of opinion by the court should be so guarded as to leave the jury free in the exercise of their own judgments. They should be made distinctly to understand, that the instruction was not given as a point of law; by which they were to be governed; but as a mere opinion, as to the facts, and to which they should give no more weight than it was entitled to. And if a fair construction of the charge complained of shall amount to no more than this, it is liable to no valid objection.

The correctness of every charge must depend upon the phraseology used by the court; and of course but little aid, from adjudicated cases, can be expected in a case like the present.

In 3 Burr, 1742, a charge of Lord Camden, when chief justice of the C. B. is given, as follows: " And the said chief justice did then and there declare and deliver his opinion to the jury, that the said several matters so produced and proved, on the part of the defendants, were not upon the whole case sufficient to bar the action, and with that opinion left the same to the jury."

This instruction, in the language of Chancellor Kent, 12 John. 518, has always been " taken and received as a direction in a point of law."

In the instruction under consideration the court say to the jury that, "admitting the merchandise in question was only subject to an ad valorem duty of fifteen per cent., yet the circumstances under which the dispute about the rate of duties arose ought not to subject the collector to the payment of more than nominal damages." "That the collector was pursuing what he believed to be the true construction of the law, and whatever injury the plaintiffs may have sustained in not receiving their goods at an earlier day, grew out of their own conduct in not entering the goods in the manner offered by the collector, at fifteen per cent. ad valorem, taking the bond, however, to secure the payment of three cents per pound," &c. This language seems to be susceptible of but one construction, and that is, that as the plaintiffs refused to give the bond required by the collector, who acted in good faith, they ought to recover no more

than nominal damages. That the jury considered this direction as controlling their verdict; is clearly shown by the damages which they assessed. And, indeed, it is not perceived how they could have given any other effect to the charge. It covered the whole case, and must have been received by the jury as a direction on the law of the case. In what other light could they have considered it. The court did not say that exemplary damages ought not to be given; but that, under the facts and circumstances of the case, no more than nominal damages should be assessed. The facts of the case were clearly established, and, indeed, were not controverted; and the amount of damages was the only matter for the investigation of the jury. On this point the jury should have exercised their own discretion, aided, if necessary, by the opinion of the court in relation to matters of fact; and controlled by their direction, in matters of law. But the jury were told, as the effect of the whole evidence, that they ought to give nominal damages only.

The collector, in point of law, had no right to demand a bond for more than the duties at the rate of fifteen per cent. ad valorem; and the plaintiffs were under no obligation to give bond in a greater sum. And the fact of having failed to give such illegal bond was not a circumstance which should have lessened the plaintiffs' damages; nor, in point of law, should the good faith in which the defendant seems to have acted, exempt him from compensatory damages.

In the case of Greenleaf v. Berth, 9 Peters 299, the counsel prayed the court to instruct the jury that " the evidence was not sufficient to prove that the said contract between Nicholson and Greenleaf, on the one part, and W. Stewart, on the other, had been annulled or rescinded between the parties, at any time prior to the execution of the deed by the plaintiff to Morris and Nicholson in May, 1796."

And this court say, " if this instruction be considered as asking the court to determine on the effect of the evidence, it was properly refused. It is the province of the jury to weigh and decide on the sufficiency of the evidence; and from the words of the instruction it would seem to be conceded there was some

evidence of the recision of the contract, as the court were asked to instruct the jury that the evidence was not sufficient to prove the fact. Where there is no evidence tending to prove a particular fact, the court are bound so to instruct the jury when requested; but they cannot legally give any instruction which shall take from the jury the right of weighing the evidence, and determining what effect it shall have. In this view the circuit court did not err in refusing the above instruction."

And again, in the case of the Chesapeake and Ohio Canal Company v. Knapp, and others, 9 Peters 567, this court say, " but it is insisted that in their instruction, the court lay down certain facts as proved, which should have been left to the jury. If this objection shall be sustained, by giving a fair construction to the language of the court, the judgment must be reversed; for the facts should be left with the jury, whose peculiar province it is to weigh the evidence and say what effect it shall have."

In some cases it may be difficult to determine whether an instruction was given on the facts or the law of a case: but where the jury are instructed what their virdict should be; it is a direction on the effect they should give to the evidence, and they cannot fail to consider the instruction as the law applicable to the facts. This must have been the light in which the jury viewed the charge under consideration; and we think it is the true construction of the language used by the court. In their address to the jury the circuit court may have qualified by words not reported, the sentences contained in the bill of exceptions; but the legal question arises, and must be decided from the face of the bill.

The objection that the proper remedy of the plaintiffs was by a motion for a new trial, and that the question now made on this writ of error, is substantially a motion for a new trial, seems not to be well founded. The amount of damages found by the jury are only referred to, as showing that they considered their verdict as controlled by the direction of the court. And this court consider that direction erroneous in point of law.

Some personal inconvenience may be experienced by an offi-

[Tracy and Balestier v. Swartwout.]

cer who shall be held responsible in damages for illegal acts done under instructions of a superior ; but, as the government in such cases is bound to indemnify the officer, there can be no eventual hardship.

The judgment of the circuit court must be reversed, and the cause remanded to that court, for further proceedings.