SUCREST CORPORATION *v.* UNITED STATES (No. 4437)[1]

United States Court of Customs and Patent Appeals, April 4, 1944

*Alan M. Stroock* (*Charles Levy* and *Milton Socolof* of counsel) for appellant.

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument December 7, 1943, by Mr. Stroock and Mr. Rao]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, dismissing appellant's protest No. 46411–K and overruling protests Nos. 46412–K and 47398–K.

Protests Nos. 46411–K and 46412–K relate to a single importation of sugar, imported into the United States from the Republic of Cuba on August 1, 1939, and entered for warehousing at the port of Philadelphia, Pa. Protest No. 47398–K relates to an importation of Cuban sugar, imported into the United States on September 19, 1939, and entered for warehousing at the port of Philadelphia. The

protests were consolidated for the purpose of the trial in the trial court.

Counsel for appellant state in their brief that appellant does not choose "to pursue its appeal from the part of the judgment which overruled Protest No. 47398–K." Accordingly, the appeal, so far as it relates to that protest, will be dismissed. This leaves for our consideration the issues raised by protests Nos. 46411–K and 46412–K, which will be hereinafter set forth.

The Congress provided in paragraph 501 of the Tariff Act of 1930 that sugar "testing by polariscope above fifty sugar degrees and not above seventy-five sugar degrees" should be dutiable at "1.7125 cents per pound," and that an additional duty of "three hundred and seventy-five ten-thousands of 1 cent per pound" should be assessed "for each additional sugar degree shown by the polariscopic test" and "fractions of a degree in proportion." Cuban sugar, however, was entitled to a preferential reduction of 20 per centum, pursuant to the Treaty of Commercial Reciprocity between the United States and the Republic of Cuba, approved by the Congress December 17, 1903. 33 Stat. 3 (19 U. S. C. secs. 124 and 125). See section 316, Tariff Act of 1930.

By a Presidential proclamation (T. D. 47040) issued under the flexible tariff provisions (section 336 of the Tariff Act of 1930), which became effective June 8, 1934, the rates of duty provided in paragraph 501, supra, were reduced on sugar "testing by the polariscope above fifty sugar degrees and not above seventy-five sugar degrees, from 1.7125 cents per pound to 1.284375 cents per pound," and "from three hundred and seventy-five ten-thousandths of 1 cent per pound" to "two hundred and eighty-one and one-fourth ten-thousands of 1 cent per pound additional" for "each additional sugar degree shown by the polariscopic test" and "fractions of a degree in proportion." (According to the stipulation of record entered into by counsel for the parties and the briefs of counsel, the rate of duty thus prescribed on sugar testing by the polariscope ninety-nine sugar degrees was 1.5675 cents per pound.)

Thereafter, the United States and the Republic of Cuba entered into a Reciprocal Trade Agreement (T. D. 47232), effective September 3, 1934, wherein the rates of duty on sugar were again reduced. (It is stated in the stipulation and the briefs of counsel that the rate of duty on sugar testing by the polariscope ninety-nine sugar degrees was reduced to .9405 cents per pound.)

It is agreed here that the rates of duty on sugar provided in the Reciprocal Trade Agreement were suspended by a public notice duly given by the Secretary of Agriculture pursuant to a Presidential proclamation, issued in accordance with the provisions of section 509 of the Sugar Act of 1937 (50 Stat. 903) and the provisions of the trade agree-

ment, and that the higher rates of duty provided in the Presidential proclamation, issued under the flexible tariff provisions, again became effective at 12:54 p. m. Eastern Standard Time, September 12, 1939. It is unnecessary, therefore, that the provisions of the trade agreement, or the provisions of the Sugar Act of 1937 which revised the provisions relative to sugar contained in the Agriculture Adjustment Act (approved May 9, 1934), be here set forth.

The stipulation, hereinbefore referred to, entered into by counsel for the parties comprises substantially all of the evidence in the case. It appears therefrom that on September 12, 1939, at 9:00 a. m. Eastern Daylight Time appellant had in bonded warehouse, under warehouse bond No. 3291, 49,297 bags or 4,929,435 pounds of "Turbinated Raw Cuban Sugar" testing by the polariscope ninety-nine or more sugar degrees; that such sugar was the product of, and was imported directly from, the Republic of Cuba; that at approximately 12:05 p. m. Eastern Daylight Time, 11:05 a. m. Eastern Standard Time, one Frank M. Poole, Jr., a clerk employed by E. H. Bailey and Co. (appellant's customs broker), appeared at the warehouse division desk of the Philadelphia Customs House and presented the "necessary papers and documents" to effect the release and withdrawal for consumption of the aforesaid sugar; that by the presentation of such papers and documents it was the purpose of appellant to withdraw the sugar from warehouse and enter it for consumption at .9405 cents per pound, the rate of duty, according to the stipulation, provided in Item 501 of Schedule II of the trade agreement hereinbefore referred to; that the aforesaid papers and documents were presented to one J. T. Baker, the customs clerk in charge, who "immediately entered the withdrawal in the Customs House Ledger, initialed the original Duty Paid' Warehouse Withdrawal for Consumption form (Customs Form 7505) and returned the original and copies of said form to Frank M. Poole, Jr."; and that—

7. Frank M. Poole, Jr. remained at the Warehouse Division desk waiting for the approval by the customs clerk of the withdrawals of another client, for a period of two or three minutes. At the end of that time one Carl F. Schmidt, the Deputy Collector in charge of the Warehouse Division, appeared at the Warehouse Division desk and announced that all withdrawals of sugars imported from the Republic of Cuba should be held up until he returned.

8. Said Carl F. Schmidt thereupon entered the office of the Assistant Collector. He returned within a few minutes, the time being then approximately 12:15 P. M. Eastern Daylight Time, with a copy of a telegram in his hand and informed both Frank M. Poole, Jr., and J. T. Baker that a telegram had just been received from the Bureau of Customs at Washington, D. C. advising that all sugars imported from the Republic of Cuba was subject to the "old" rate of duty as of 11 P. M. Eastern Standard Time September 11th, 1939.

9. Frank M. Poole, Jr. was then advised by said Carl F. Schmidt that in order to effect the withdrawal for consumption of said sugar it would be necessary to pay the duty thereon at the rate existing prior to the effective date of the aforesaid Reciprocal Trade Agreement between the United States of America and the

Republic of Cuba, namely 1.5675c per pound and that no withdrawal of the said sugar at the rate fixed in Item 501 of Schedule II of said Reciprocal Trade Agreement, i. e. .9405c per pound, would be permitted.

10. Frank M. Poole, Jr. thereupon made no further efforts to effect the withdrawal for consumption of said sugar and left the Customs House.

It further appears from the stipulation that from September 26, 1939, to October 19, 1939, 7,250 bags or 725,000 pounds of sugar testing by the polariscope 99 sugar degrees were withdrawn from warehouse and duty paid thereon at 1.5675 cents per pound; that from November 17, 1939, to December 21, 1939, 6,000 bags or 600,000 pounds of sugar testing by the polariscope 99.6 sugar degrees were withdrawn from warehouse and duty paid thereon at the rate of 1.581 cents per pound; and that—

14. The duty upon the aforesaid importations was liquidated by the Collector of Customs at the Port of Philadelphia on November 1st, 1939 at the rate of 1.581c per pound and the amount owing by the plaintiff to the defendant under the liquidation was duly paid.

15. The refusal of the Collector to permit the withdrawal of the merchandise was not in any way connected with the ability of the importer to pay the duties chargeable.

It further appears from the evidence of record that on September 12, 1939, the appellant company had on deposit "in banks" ample funds subject to immediate withdrawal with which to pay the customs duties estimated by the collector to be payable on the sugar which it desired to withdraw from warehouse on that date.

It will be observed from what has been said that at the time appellant attempted to withdraw its sugar from warehouse and enter it for consumption, approximately 12:15 p. m. Eastern Daylight Time (11:15 a. m. Eastern Standard Time) September 12, 1939, the rate of duty which, it is agreed by counsel, was .9405 cents per pound provided in the Reciprocal Trade Agreement between the United States and the Republic of Cuba was in full force and effect; that the old rate of duty which counsel for the parties agree was 1.5675 cents per pound, provided by the Presidential proclamation (T. D. 47040) issued under the flexible tariff provisions (section 336 of the Tariff Act of 1930), did not become effective until 12:54 p. m. Eastern Standard Time (1:54 Eastern Daylight Time) September 12, 1939; and that the collector was in error in believing that the old rates of duty were effective at the time appellant attempted to withdraw the sugar and enter it for consumption, and in estimating the duties in accordance with the old rate of duty, to wit, 1.5675 cents per pound.

It may be said at this point that there is nothing of record to indicate that, at the time of the collector's refusal to accept the warehouse withdrawal for consumption entry presented by appellant, appellant did not have ample opportunity to pay the duties estimated by the collector to be payable on the sugar. Furthermore, as appears from the stipulation, hereinbefore referred to, appellant made no

effort at that time to pay the estimated duties in order to effect the withdrawal of the sugar for consumption.

As hereinbefore noted, from September 26, 1939, to October 19, 1939, a portion of the sugar was withdrawn from warehouse, and duty paid thereon at 1.5675 cents per pound. Thereafter, on November 1, 1939, all of the entries, including those for warehousing as well as those for consumption, were liquidated and duty assessed on the sugar covered thereby at 1.581 cents per pound. From November 17, 1939, to December 21, 1939, 6,000 bags or 600,000 pounds of sugar, which, according to the stipulation, tested by the polariscope 99.6 sugar degrees, were withdrawn from warehouse, and duty on all the sugar withdrawn from warehouse and entered for consumption was duly paid in accordance with the collector's assessment.

On November 6, 1939, appellant filed protest No. 46411–K, which recites substantially all of the facts hereinbefore stated, but which, as stated therein, was directed against the collector's refusal to permit the withdrawal from warehouse and to accept appellant's entry for consumption of all of the sugar attempted to be withdrawn by appellant on September 12, 1939. The protest is not directed against the collector's liquidation and assessment of duties.

In protest No. 46412–K, filed December 22, 1939, appellant protested the collector's liquidation and assessment of duty on the ground that the entries should have been liquidated and the sugar assessed for duty at .9405 cents per pound, the rate provided in the Reciprocal Trade Agreement between the United States and the Republic of Cuba.

As hereinbefore noted, protests Nos. 46411–K and 46412–K relate to a single importation of sugar.

Many references are made in the main brief of counsel for appellant and in their reply brief to both of the aforesaid protests. For example, it is stated that those protests "complained essentially of the same injury to the importer. The former [protest No. 46411–K] protested the refusal of the collector to accept the importer's warehouse withdrawal entry when first tendered; the latter [protest No. 46412–K] protested the liquidation of the rate of duty upon subsequent entry of the sugar."

Counsel for appellant also state that "The two Protests are directed to a single, final determination which may either be said to have been made at the date of tender and not corrected on the liquidation, or made for the first time at the later date. In either case or in both cases (if, as we believe, both Protests are permissible) the remedy is single—recovery of excess duties paid upon entry of merchandise and liquidation of the duties."

Sections 505 and 514 of the Tariff Act of 1930 read, respectively, as follows:

SEC. 505. PAYMENT OF DUTIES.

The consignee shall deposit with the collector, at the time of making entry,

unless the merchandise is entered for warehouse or transportation, or under bond, the amount of duty estimated to be payable thereon. Upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law and shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury, and collect any increased or additional duties due or refund any excess of duties deposited as determined on such liquidation.

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

It is conceded in the brief of counsel for appellant that it is the duty of the collector to estimate the duties payable on imported merchandise, and that, unless such duties are paid, merchandise may not be withdrawn from bonded warehouse and entered for consumption. Counsel contend, however, that, even though such estimated duties are not paid, section 514, *supra*, authorizes the filing of a protest against the collector's refusal to accept an entry for consumption of such warehouse goods, provided such protest is filed within sixty days after, but not before, such refusal, where it appears that the importer tendered the proper amount of duty in accordance with the rate of duty then in force and, as is claimed in the instant case, is damaged by the action of the collector.

In support of their contention, counsel for appellant cite the cases of *Tracy* v. *Swartwout*, 10 Peters 80, decided in 1836; *Hale Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 508, T. D. 39660; *United States* v. *Los Angeles Trading Co.*, 13 Ct. Cust. Appls. 330, T. D. 41236.

So far as we are aware, the right of an importer to protest against the decision of the collector excluding merchandise from entry or delivery "under any provision of the customs laws" was, for the first

time, authorized by section 514 of the Tariff Act of 1922. That provision is also contained in section 514 of the Tariff Act of 1930. The latter section also provides that a protest may be filed against such refusal within 60 days after, but not before, the refusal.

In the case of *Central Commodities Corp.* v. *United States*, 6 Cust. Ct. 552, C. D. 514, the United States Customs Court referred to the provisions of section 514 of the Tariff Act of 1930 and held that the court had jurisdiction to consider a protest duly filed against the decision of the collector excluding merchandise from entry or delivery. The court also held that it was the duty of the collector to estimate the duties payable on imported merchandise under the provisions of section 505, *supra*, and that, as it appeared in that case that the importer had failed to pay the estimated duties, it was not entitled to any relief until the entry was liquidated and the rate or amount of duty had been definitely determined by the collector.

In the instant case, the trial court held that protest No. 46411–K did not ask for affirmative relief and did not set forth a good cause of action, and, therefore, dismissed the protest.

In so holding, the court based its decision, in part at least, on its decision in the case of *Central Commodities Corp.* v. *United States*, *supra*.

It appears from protest No. 46411–K that, in addition to the allegations contained therein, as hereinbefore set forth, appellant claimed that the rate (.9405 cents per pound) provided for sugar, the product of, and imported from, Cuba, in the Reciprocal Trade Agreement between the United States and the Republic of Cuba was in full force and effect at the time it tendered its entry for consumption (11:15 a. m. Eastern Standard Time, September 12, 1939), and that the increase in duty did not become effective until 12:54 p. m. Eastern Standard Time on that date. The protest does not contain any allegation that appellant paid or offered to pay the duty of 1.5675 cents per pound, estimated by the collector to be due on the sugar. It is alleged, however, that the collector refused to accept duty at any rate less than 1.5675 cents per pound.

Protest No. 46412–K, which was against the collector's liquidation and assessment of duty, contains all of the allegations of fact contained in protest No. 46411–K, and, in addition thereto, it is alleged that the sugar should have been assessed for duty at the rate of .9405 cents per pound, the rate provided in the Reciprocal Trade Agreement, rather than at 1.581 cents per pound as assessed by the collector. It is also alleged in the protest that the collector refused to accept the tender of duty at the rate of .9405 cents per pound and insisted that the proper rate was 1.5675 cents per pound. No claim is made in the protest that the estimated duties were tendered or paid by the importer prior

to 12:54 p. m. Eastern Standard Time, September 12, 1939, when the higher·rate of duty became effective.

Counsel for appellant here contend that the refusal of the collector to accept the entry for consumption and permit withdrawal of the sugar from bonded warehouse at approximately 11:15 a. m. Eastern Standard Time, September 12, 1939, caused appellant irreparable damage in that it was prevented from withdrawing the sugar prior to the time the increase in duty became effective; that, as alleged in · protest No. 46412–K, the collector at the time of liquidation should have corrected the error which he made in refusing to accept the withdrawal for consumption entry, and, instead of assessing the sugar at 1.581 cents per pound, the rate of duty which became effective at 12:54 p. m. Eastern Standard Time, September 12, 1939, should have assessed it at .9405 cents per pound, the rate of duty provided in the Reciprocal Trade Agreement; and that, therefore, the protests should have been sustained by the trial court.

In support of their contention, counsel for appellant rely, among others, upon the decisions in the cases of *United States* v. *Legg,* 105 Fed. 930, and *United States* v. *Perkins et al.,* 119 Fed. ·384.

In the case of *Tracy* v. *Swartwout, supra,* the suit was against the Collector of Customs at the port of New York, and was brought to recover damages from the defendant who had refused to permit the importer to enter certain casks of sirup of sugar cane at the rate of 15 per centum ad valorem. The collector, acting under instructions of the Secretary of the Treasury, demanded the execution and delivery of a bond for the payment of duty at the rate of 3 cents· per ·pound. The importer paid no duty and gave no bond, and the sirup remained in possession of the collector for a long period of time and deteriorated greatly in value. It was conceded that the collector acted in good faith. It appears from the opinion that the law in force at the time the importer attempted to enter its goods provided a duty of only 15 per centum ad valorem which was much less than the 3 cents per pound demanded by the collector,· and that the collector's estimated duties were in excess of the duty provided by law. The court stated that the importer offered to comply with the law by giving bond for the proper amount of duty, and that the collector had demanded a bond in an amount greater than that due under the law. The court further stated that where a ministerial officer, such as a collector at a port, acts in good faith, he is not liable for exemplary damages for an injury done, but is liable for compensatory damages where his acts are clearly contrary to law, and that, although the collector had a right to hold possession of imported goods until the estimated duties were paid or secured to be paid, should he retain possession of such goods and refuse to deliver them after the proper amount of duties were paid or bond given or tendered for the proper rate of

duties, he was liable for damages which the importer sustained by his refusal.

In section 49, chapter 22, of an act entitled "An Act to regulate the collection of duties on imports and tonnage," approved March 2, 1799, 1 Stat. 664, it was provided that the collector should make a gross estimate of duties on imported goods, and that "the amount of the said estimated duties having been first paid, or secured to be paid, pursuant to the provisions of this act" the collector should "grant a permit to land the goods  *  *  *, whereof entry shall have been so made."

That provision, relative to the authority of the collector to estimate duties on imported merchandise, was in full force and effect at the time the decision in the case of *Tracy* v. *Swartwout, supra,* was rendered, although no reference is made in the statement of the case, in the briefs of counsel as reported, or in the decision of the court to such provision. Furthermore, section 49, *supra,* was apparently in full force and effect at the time of the enactment of section 2869 of the Revised Statutes, 2nd Edition, 1878, and was reenacted without material change, so far as the issues here are concerned, as section 2869.

The provisions of section 2869, *supra,* were expressly repealed by the Tariff Act of 1922, and were superseded by the provisions of section 504 of that act, which were identical with the provisions of section 505 of the Tariff Act of 1930, hereinbefore quoted.

It is unnecessary that we here cite or discuss the various decisions of the Supreme Court, or that we refer to the statutes upon which those decisions were based relative to the liability of the collector for moneys unlawfully exacted from importers either as estimated or liquidated duties, as many of those decisions have been analyzed and discussed by the Supreme Court in cases hereinafter referred to.

In the case of *Arnson* v. *Murphy,* 109 U. S. 238, decided in 1883, it was stated, in substance, that section 2931 of the Revised Statutes provided that the decision of the Collector of Customs as to the rate and amount of duties to be paid on imported merchandise, as well as the dutiable costs and charges thereon, should be final and conclusive unless the owner, importer, consignee, or agent should, within ten days after the ascertainment and liquidation of the duties, give notice in writing to the collector, if dissatisfied with his decision, setting forth distinctly and specifically the grounds of the objection thereto and, within thirty days after the date of such liquidation, appeal to the Secretary of the Treasury; and that the decision of the Secretary would be final and conclusive unless suit be brought within ninety days after such decision or within ninety days after the payment of the duties paid pursuant to the decision of the Secretary. The court there stated that the *common-law right of action* to recover duties ille-

gally exacted by Collectors of Customs as agents of the Government upon imported merchandise *rested upon an implied promise of the collector to refund such duties,* in the event they were unwillingly paid and, which before payment to his principal, the collector had been notified he would be required to repay, and that such common-law right of action involved a corresponding right on the part of the collector to withhold from the Government the money in dispute. The court then reviewed an act of the Congress of March 3, 1839, chapter 82, section 2, 5 Stat. 348, which required Collectors of Customs to pay into the Treasury all moneys officially received by them without regard to claims by importers for illegal exactions. The act also provided that the Secretary of the Treasury, on being satisfied that the duties paid to the collector under protest were in excess of those required by law, should refund such excess duties. The court also called attention to the decision in the case of *Cary* v. *Curtis,* 3 How. 236, wherein the Supreme Court held that the legal effect of the provisions hereinbefore referred to was to take from an importer all right of action against the collector, and stated that the Congress, which was in session at the time that decision was announced, enacted the act of February 26, 1845, which restored to an importer his right of action against the collector, but required, as a condition precedent, that a protest be filed in writing at the time of the payment of duties alleged to have been illegally exacted. That act also took away from the Secretary of the Treasury the authority to refund excess duties collected by the collector, which authority had been conferred upon him by the act of 1839, *supra.* The court quoted from section 3011 of the Revised Statutes, which was in force at the time the action was brought in that case and which provided, in substance, that when payment was made to the collector under protest in order to obtain possession of imported merchandise and when the amount paid was not authorized by law, the importer might maintain an action at law to recover any excess amount of duties paid, but that no recovery could be had unless a protest was filed and an appeal taken as prescribed by section 2931 of the Revised Statutes. After considering other issues in the case, the court said:

From this review of the legislation and judicial history of the subject, it is apparent that the *common-law action recognized as appropriate by the decision in Elliott* v. *Swartwout,* 10 Peters, 137, *has been converted into an action based entirely on a different principle—that of a statutory liability, instead of an implied promise* [under the common law]—which, if not originated by the Act of Congress, yet is regulated, as to all its incidents, by express statutory provisions. And among them are the conditions which fix the time when the suit may begin, and prescribed the period at the end of which the right to sue shall cease. *Congress having undertaken to regulate the whole subject, its legislation is necessarily exclusive.* [Italics not quoted.]

The suit in that case was against the Collector of Customs at the

port of New York, and, although the judgment was reversed for reasons not of importance here, the case was remanded with instructions to grant a new trial.

In the case of *Elliott* v. *Swartwout*, 10 Peters 137, cited by the Supreme Court in the case of *Arnson* v. *Murphy, supra,* it was held that a Collector of Customs was personally liable in an action of *assumpsit* to recover an excess of duties paid to him and by him paid into the Treasury of the United States, although he had acted in good faith and under instructions of the Treasury Department, provided that notice had been given him at the time of payment that the duties required by him to be paid were excessive and that the party paying them did so in order to get possession of his goods and intended to sue to recover the amount of duties unlawfully exacted.

For a more complete review of the decisions of the Supreme Court relative to the liability of the collector and the authority for such decisions see *Barney* v. *Rickard,* 157 U. S. 352, where it was held that it was the duty of the collector to estimate duties payable on imported merchandise which, the court stated, the importer was compelled to pay in cash forthwith unless the goods were entered for warehousing.

It may be said at this point that, so far as has been pointed out by counsel and so far as we have been able to ascertain from an independent study of the question, there has never been any common-law right of action against the Government of the United States for the recovery of duties alleged to have been unlawfully exacted. All common-law rights of action, referred to in the decisions cited, were against the collector, not against the Government. As stated by the Supreme Court in the case of *Nichols* v. *United States,* 7 Wall. 122, 126: "Every government has an inherent right to protect itself against suits, and if, in the liberality of legislation, they are permitted, it is only on such terms and conditions as are prescribed by statute."

The suits in the instant case are against the Government of the United States. They are not against the Collector of Customs.

Under the Tariff Act of 1930 all rights and liabilities and all remedies relative to the importation of merchandise and duties and charges thereon are provided for by statute, and the common law, either substantive or adjective, is not available to an importer of merchandise. As stated by the Supreme Court in the *Arnson* v. *Murphy* case, *supra,* "Congress having undertaken to regulate the whole subject, its legislation is necessarily exclusive."

We turn, therefore, to the particular provisions of the Tariff Act of 1930 for an answer to the issue posed by counsel for appellant.

Section 490 of the act provides that an entry for imported merchandise is incomplete whenever, among other things, the importer fails to pay the estimated duties. Section 505, *supra,* as hereinbefore noted, provides that the consignee shall deposit with the collector, at

. the time of making entry for consumption, the amount of duty estimated to be payable on the goods. Section 512 of the act provides, in substance, that all moneys paid.to a Collector of Customs "for unascertained duties or for duties paid under protest against the rate or amount of duties charged shall be deposited to the credit of the Treasurer of the United States." Section 513 of the act provides, in substance, that Collectors of Customs shall not be liable on account of any rulings or decisions as to the rate and amount of duties or as to any other matter which under the act might entitle the importer to protest the collector's decision. Section 557 of the act provides, among other things, that merchandise entered for warehousing and subject to duties may be withdrawn "for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal."

It is clear from a consideration of the hereinbefore referred to provisions of the Tariff Act of 1930 that the Congress contemplated that the collector should estimate the amount of duties due on imported merchandise and that the importer or consignee should deposit with the collector at the time of making entry for consumption the amount of such estimated duties as a condition precedent to his right to enter such merchandise for consumption and receive. a permit of delivery therefor.

It is unnecessary that we discuss other decisions cited and relied upon here by counsel for appellant, as the question of the payment of estimated duties was not involved in any of those cases.

The appeal, so far as it relates to protest No. 47398–K, is dismissed.

We come now to the question of the sufficiency of protest No. 46411–K.

That protest is directed against the refusal of the collector to accept an entry for consumption and permit withdrawal of appellant's sugar from bonded warehouse at. 11:15 a. m. Eastern Standard Time, September 12, 1939. As hereinbefore noted, the protest does not contain a statement that the estimated duties were either tendered or paid. As payment of the collector's estimated duties is a condition precedent to the right of an importer to enter its goods for consumption and receive a delivery permit therefor, it is evident that that protest does not state a good cause of action and was, therefore, properly dismissed by the trial court. Had the estimated duties been paid and had the collector refused to accept a proper consumption entry and permit withdrawal of the sugar from bonded warehouse, a protest would have been proper under section 514, *supra*.

No issue is raised as to the sufficiency of protest No. 46412–K.

Whether a protest is dismissed or overruled, is purely technical and ordinarily, as in the instant case, does not affect an importer's rights

See *L. Sandoz Vuille, Inc.* v. *United States,* 22 C. C. P. A. (Customs) 303, T. D. 47349.

For the, reasons hereinbefore stated, we are of opinion that the trial court reached the right conclusion on the merits of the case. Accordingly, its judgment, dismissing protest No. 46411–K and overruling protest No. 46412–K, is *affirmed.*