## MILLS & GIBB *v*. UNITED STATES (No. 1707).[1]

CONSTRUCTION, PARAGRAPH I, SECTION 3, TARIFF ACT OF 1913—ENTERED, HIGHER THAN MARKET, VALUE.

The provisions of paragraph I of section 3, tariff act of 1913, were designed by Congress to vest in the Secretary of the Treasury the sole and exclusive authority to direct assessment of duty upon an amount less than the entered value of the merchandise. Where goods were entered at a value higher than that stated in the invoice, with a certificate that this was done to meet advances made by the appraiser in similar pending cases, and the final appraisement was between the entered and invoice values, the refusal of the Secretary of the Treasury to direct the collector to assess duty upon less than the entered value is not reviewable upon appeal by the Board of United States General Appraisers or the United States Court of Customs Appeals.

[1] T. D. 37164 (32 Treas. Dec., 452).

United States Court of Customs Appeals, April 11, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7893 (T. D. 36347).

[Affirmed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellants.
*Bert Hanson,* Assistant Attorney General, for the United States.

[Oral argument Oct. 10, 1916, by Mr. Lane and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of certain window curtains which were dutiable at an undisputed ad valorem rate of duty under the tariff act of October 3, 1913. Duty was assessed at that rate upon the merchandise at its entered value. The sole issue in the case arises upon a contention of the importers that duty should have been assessed upon the merchandise at a valuation fixed by its final reappraisement, which was less in amount than the entered value. This claim was made under the following provisions of paragraph I of section 3 of the act:

* * * The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final decision on reappraisement, and it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his directions with a statement of his conclusions and his reasons therefor.

The facts in the case were brought upon the record by a written stipulation of the parties. It appears that on November 14, 1913, merchandise of the same character as this was imported into this country by the same importers, and was entered for duty at the invoice price. The local appraiser, however, found the actual market value of the merchandise to be 20 per cent in excess of the invoice price, and reported accordingly. The importers duly appealed for a reappraisement of the merchandise, and on February 11, 1914, the appellate general appraiser found the actual market value of the merchandise to be 5 per cent in excess of the invoice price aforesaid. No appeal was taken from this appraisement; it therefore remained the final reappraisement of the merchandise.

On February 7, 1914, the present merchandise, which as already stated is of the same character as the foregoing, was entered by the importers. At the time of this entry the appeal for reappraisement in the former case was still pending. In the latter case, therefore, the importers in declaring the value of the merchandise upon entry added 20 per cent to the invoice price thereof, stating that this

addition was made by them in order to meet the advances which had been made by the appraiser upon the former importations, which were then pending upon an appeal for reappraisement, at the same time certifying that the entered value of the merchandise as thus increased was higher than its actual foreign market value to the extent of the aforesaid addition. The local appraiser having approved of the entered value of this importation as thus increased, the importers appealed for a reappraisement, and afterwards, to wit, on March 18, 1914, the single general appraiser who heard the appeal appraised the merchandise at the invoice price, plus 5 per cent increase. No appeal was taken from this reappraisement.

It may be repeated, in other words, that the first importations were entered at their invoice price; that this valuation was advanced 20 per cent by the local appraiser; that upon appeal the general appraiser reduced this addition to 5 per cent; that the second importations, the merchandise being similar to the first, were entered while the foregoing appeal for reappraisement was pending; that their value was entered by the importers at the invoice price, plus 20 per cent, in order to meet the advance made by the local appraiser in the first case; and that the second importations, like the first, were finally reappraised at the invoice price, plus 5 per cent. It appears therefore that the invoice price as first declared by the importers was not exactly sustained by the final reappraisement, nor was the advance of 20 per cent made by the local appraiser finally sustained, for the final reappraisement declared the actual market value of the merchandise to be the invoice price, plus an addition of 5 per cent only.

Under these circumstances the importers claimed that the second importations were within the favor of the statute first above copied, and that the Secretary of the Treasury should direct the collector to assess duty upon the invoice price of the merchandise, plus 5 per cent, as determined by the final reappraisement thereof, notwithstanding the fact that entry had been made at the invoice price, plus 20 per cent. In support of this contention the importers addressed the Secretary of the Treasury as follows:

JUNE 18, 1914.

The honorable the SECRETARY OF THE TREASURY,
*Washington, D. C.*

DEAR SIR: We respectfully request that in the liquidation of the entries mentioned below duty may be assessed upon the values found upon reappraisement, which are less than the entered values. The entries in question are as follows:

| Reappt. No. | Entry No. | Date of entry. | Vessel. |
|---|---|---|---|
| 73315 | 39843 | Feb. 7, 1914 | *St. Paul.* |
| 73667 | 43051 | Feb. 11, 1914 | *Minneapolis.* |

In making these entries we added 20 per cent to the invoice values of the goods in order to meet advances made by the appraiser on entries 320221, November 14, 1913, ex steamship *Vaderland;* 329554, November 24, 1913, ex steamship *Majestic*, then pending on appeal for reappraisement and covered by reappraisements 72582 and

73072, respectively, the character of the merchandise covered by all four entries being identical. We certified, at the time of making the additions upon entry, that the entered value was higher than the foreign market value and that the goods were so entered to meet advances by the appraiser.

The merchandise in question consists of window curtains made up by mounting a lace frame of somewhat elaborate design upon plain net. The lace frame constitutes from 75 to 80 per cent of the value of the curtains, and the net and the cost of mounting are very slight factors in the cost of the finished article. The profit on the lace frame and the profit on the net were fully included in the invoice values. These values also included a further addition equivalent to 30 per cent of the cost of mounting and 3 per cent over all costs and profits already included. The appraiser made a flat addition of 20 per cent over and above all such elements of costs and profits. No attempt was made at the hearing of the case to justify the advance of 20 per cent. The general appraiser, after a thorough hearing and careful consideration of the evidence, decided upon an addition of 5 per cent to our entered values. While we believe that our invoice prices were fully justified, we have accepted this advance, as we prefer that there should be no controversy with the Government respecting the values of these goods. The Government also accepted the reduction from 20 per cent advance to 5 per cent advance and took no appeal to a board of three general appraisers.

The additions upon entries 39843 and 43051 were made in good faith, after due diligence and inquiry upon our part. We were thoroughly familiar with the facts connected with the manufacture of these curtains and were also satisfied from the outset that the advance was excessive; nevertheless, we preferred to make the additions upon entry and avoid possible penalties.

The general appraiser having taken the same action on entries 39843 and 43051 as was taken upon 320221, viz, having added 5 per cent to our invoice values, we submit that the entries the subject of this application should be liquidated upon that basis rather than upon the entered values.

Very respectfully,                      (Signed)      MILLS & GIBB.

The foregoing application was considered by the Secretary and was denied. The Secretary thereupon addressed the following communication to the collector:

TREASURY DEPARTMENT,
*Washington, July 28, 1914.*

To the COLLECTOR OF CUSTOMS,
*New York, N. Y.*

SIR: The department has to refer to your letter of the 6th instant, returning the application of Messrs. Mills & Gibb for the reduction of the entered value under the provisions of paragraph I of section 3 of the current tariff act of certain lace window curtains covered by entries Nos. 39843 and 43051 of February, 1914, which were advanced in value by the importers to meet advances made by the appraiser on similar merchandise covered by former entries Nos. 320221 and 329554, then pending on appeal to reappraisement.

It appears that the appraiser added 20 per cent for market value on the former entries referred to, and that on appeal to reappraisement the general appraisers sustained an advance of only 5 per cent on the entered value, which was also the invoiced value.

It further appears that the appeal to reappraisement on the entries which are the subject of the application and on which an advance of 20 per cent had been made by the importers resulted in an addition of only 5 per cent to the invoiced values.

The importers stated at the time of making entry that the advances were made to meet former advances by the appraiser on similar merchandise, and that the entered values were higher than the market values to the extent of the advances made by them.

Inasmuch as the contention of the importers was not sustained as to market value, the department must deny their application for a reduction of entered values.

You will therefore liquidate entries Nos. 39843 and 43051 on the basis of the entered values.

The four entries in question and all papers pertaining thereto are returned under separate cover.

Respectfully,       (Signed)    WM. P. MALBURN,
*Assistant Secretary.*

Thereafter the Secretary, in response to another communication from the importers, addressed a second letter to the collector, reading as follows:

TREASURY DEPARTMENT,
*Washington, September 23, 1914.*

To the COLLECTOR OF CUSTOMS,
     *New York, N. Y.*

SIR: The department acknowledges the receipt of your letter of the 9th instant, returning a letter from Thomas H. Watson, manager of the curtain department of Mills & Gibb, requesting a refund of part of the duties paid by the firm on certain curtains covered by entries Nos. 320221, 329554, 39843, and 43051.

It appears that the invoiced value of the merchandise covered by the first two entries was advanced in value 20 per cent by the appraiser, and only a 5 per cent advance was sustained on reappraisement, and that the entries were therefore liquidated on the basis of the reappraised value.

They therefore can not be considered under the provisions of paragraph I of section 3 of the tariff act pertaining to a reduction of the entered values.

It further appears that the last two entries were advanced in value 20 per cent by the importers to meet advances by the appraiser in the two previous cases mentioned above, and that the importers claimed the entered values were higher than the foreign market values "to the extent of the additions." On reappraisement of the merchandise, values were returned only 5 per cent in advance of the invoiced values. The importers therefore request a refund of duties on the 15 per cent advance which was not sustained.

Under date of July 28 last the department denied the application of the importers for a reduction of the entered values on the entries in question on the ground that the importers' contentions were not sustained.

In view of the fact that the importers claimed the entered values to be higher than the foreign market values "to the extent of the additions," they clearly contended that the invoiced values correctly represented the foreign market values; and inasmuch as their contentions were not sustained, the department had no other alternative than to deny their application, and is therefore without authority to grant any relief in the matter.

Respectfully,       (Signed)    A. J. PETERS,
*Assistant Secretary.*

The collector accordingly assessed duty upon the merchandise at its entered value instead of its reappraised value.

The importers protested against the assessment in the following terms:

SIR: We hereby protest against your decision, liquidation, and assessment of duties as made by you on our importations below mentioned, consisting of certain curtains, curtain nets, or other merchandise contained in the cases or packages marked and numbered as described on the entries and invoices thereof, to which for more certainty of description reference is hereby had, claiming that you have erroneously assessed

duty upon certain additions made to the invoice values by the importers to meet advances made by the appraiser, and that the true value of the goods is the reappraised value.

Claiming further that application for remission of duty under paragraph I of section 3 of the tariff act of October 3, 1913, has been erroneously disallowed.

We give notice that we pay all other higher rates than is claimed above as the legal rate under compulsion and to obtain possession of our goods. We claim that the duty exacted by you is not the legal duty chargeable upon said goods, holding you and the Government responsible for all excess of duty exacted by you upon said goods above the legal duty.

The protest was submitted to the Board of General Appraisers and was overruled. The importers appeal.

For convenience of reference the controlling provisions of the statute will be copied again at this point.

Paragraph I of section 3:

* * * -The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final decision on reappraisement, and it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his directions with a statement of his conclusions and his reasons therefor.

It appears that the fundamental difference between the interpretation which the Secretary places upon these provisions and that adopted by the importers relates to the requirement in the act that the Secretary shall grant relief thereunder only in cases wherein "the importer's contention shall subsequently be sustained by a final decision on reappraisement." The importers' claim that the so-called "contention" intended by the act is simply the statutory contention which importers must make when they appeal for a reappraisement of merchandise, namely, that they "deem the appraisement thereof too high." They claim that this contention should be held to be "sustained" whenever the final reappraisement discloses that the value as advanced by the appraiser is too high, even though the reappraisement may not sustain the precise entered value of the merchandise. On the other hand the Secretary defines the "contention" aforesaid to be the valuation which the importers place upon the merchandise when they enter it for duty. The Secretary therefore holds that importers can not be entitled to the relief provided by the paragraph unless the final appraisement exactly sustains the entered value thereof.

In the present case accordingly the Secretary refused to direct the collector to assess duty upon an amount less than the entered value of the merchandise, but on the contrary instructed him to assess duty upon the full entered value thereof. This instruction, of course, did

not arm the collector with any new authority in the premises, but simply required him to perform whatever duty was imposed upon him by statute in the absence of special instructions in behalf of the importers. Under these circumstances the collector was bound by the letter of the law at least to assess duty upon the entered value of the merchandise, and this he did.

The importers contend that the Secretary was in duty bound under the circumstances to direct the collector to assess duty upon only the appraised value of the merchandise; that the record discloses that he refused to-perform this duty because he misinterpreted the law as expressed in the paragraph; that the necessary facts were before the board and are now before the court to show that the importers were entitled of right to such a direction from the Secretary, those facts being the similarity of the several importations, the appraiser's advance and the appeal to reappraisement in the first case, the importers' advance and certificate at entry in the second case, the final decision upon reappraisement sustaining the importers' contention, and also good faith, due diligence, and inquiry upon the part of the importers; and that these facts appearing the board should have sustained the protest, notwithstanding the refusal of the Secretary to issue the statutory directions to the collector in the premises and that the court should now accordingly reverse the decision of the board, since it failed to sustain the protest.

We think, however, that the provisions of paragraph I, above quoted, were designed by Congress to vest in the Secretary the sole and exclusive authority to direct assessment upon an amount less than the entered value of the merchandise and that a refusal by him in any case to direct such an assessment is not reviewable by the board or this court upon an appeal from the collector's assessment in such case.

In the customs administrative act of 1890 it was enacted that "the duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value." (Par. 7.)

In the tariff act of 1909 it was enacted that "the duty shall not, however, be assessed in any case upon an amount less than the entered value." (Subsec. 7, sec. 28.)

In paragraph I, supra, of the tariff act of 1913 Congress reenacted this provision of the tariff act of 1909, but committed to the Secretary the authority in given cases to direct an assessment of merchandise at its reappraised value even though this be less than the entered value. A reading of the paragraph discloses that the authority which is thereby vested in the Secretary is not formal or ministerial in character but is quasi judicial. In the exercise of it the Secretary is called upon to inquire whether a proper certificate has been filed by the importers at entry, whether a similar case was then pending

upon appeal for reappraisement, whether the importers' "contention" therein has subsequently been sustained by a final decision upon reappraisement, and whether the action of the importers at entry was taken in good faith and after due diligence and inquiry upon their part. This requires an examination by the Secretary into the facts and circumstances of the case, and a quasi judgment upon the questions just enumerated. Decatur *v.* Paulding (14 Pet., 497–514); United States ex rel. Dunlop *v.* Black (128 U. S., 40–48). The act does not provide for an appeal from a refusal by the Secretary to direct an assessment in the exercise of this authority, nor is there any provision for preserving or reviewing the evidence upon which the Secretary may have acted in such a case, nor can it be doubted that Congress possessed the power to entrust this authority to the Secretary without granting an appeal from his decision in such cases. The paragraph in question provides that the Secretary in cases wherein he may direct assessment upon an amount less than the entered value shall accompany his directions with a statement of his conclusions and his reasons therefor. But there is no requirement in the law that he shall file any statement in cases wherein he may refuse to direct such assessment.

It should be noted furthermore that the Secretary of the Treasury, in issuing directions to the collector under the statute aforesaid, is expressly restricted to cases wherein "it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part." The present record does not disclose affirmatively that the Secretary has found in favor of the importers upon these points in this case.

On the other hand the authority granted to the Secretary by the paragraph in question is distinctly denied to the collector. That officer is neither empowered nor permitted to examine or decide as to the facts upon which the relief of the importers is made to depend. The paragraph expressly provides that the collector shall in no case assess duty upon an amount less than the entered value, unless directed to do so in certain cases by the Secretary. The assessment in the present case therefore does not rest upon the instructions addressed to the collector by the Secretary in his first letter, above copied, but upon the imperative mandate of the law which defines the duties of the collector in the absence of a direction by the Secretary for a reduced assessment. And it should be remembered in this connection that it is the action or decision of the collector which may be challenged by protest, and that this makes up the issue which goes to the board for decision, and which may be appealed to this court. (Par. N of sec. 3, tariff act of 1913.)

We are not unmindful of the fact that cases may be cited wherein some erroneous action of the Secretary, or of an appraiser or appraising board, or of a weigher, or gauger, may have entered affirma-

tively into an actual assessment and become a part of it in such a manner as to affect the assessment itself with reversible error. The instant case, however, is not within that rule. Morrill *v.* Jones (106 U. S., 466); United States *v.* Passavant (169 U. S., 16); United States *v.* Beebe (122 Fed., 762).

We are referred also to the case of Bowling Green Storage Co. *v.* United States (3 Ct. Cust. Appls., 309; T. D. 32588) in support of the importers' contention. The concluding paragraph of the decision in that case, however, will serve without other explanation to differentiate it from the present case. The court said:

We construe the law as authorizing a determination by the collector, as in ordinary cases, under rules and regulations to be prescribed by the Secretary of the Treasury. It follows that a right of appeal from such determination exists under the authority of subsection 29 of section 28 of the act of 1909.

In respect to the present issue, however, we are convinced that Congress did not intend the provisions of paragraph I, now in question, "as authorizing a determination by the collector, as in ordinary cases, under rules and regulations to be prescribed by the Secretary of the Treasury," but rather that the authority to decide upon a reduction of the dutiable valuation to an amount less than the entered value was entirely withheld from the collector and was committed to the Secretary of the Treasury alone.

We are also cited to the provisions of paragraph Y of section 3 of the tariff act of October 3, 1913, whereby authority is granted to the Secretary of the Treasury to correct manifest clerical errors in certain entries and liquidations and to refund money paid in excess of lawful duty in certain cases. It is contended that the board and this court have in divers cases assumed jurisdiction to review the exercise of this authority·by the Secretary, and that upon the same principle the action of the Secretary in the present case may be reviewed. In answer to this, however, it is sufficient .to say that the terms of the respective paragraphs thus placed in comparison are radically different, and that at an early date the Treasury Department under enactments similar to paragraph Y undertook to depute the authority in question to the collectors. (Treasury Regulations, 1884, Article 611; T. D. 7925; T. D. 10534.) This course of procedure, regardless of any question concerning its correctness, impairs the value of the cited provision as an analogy in this case..

The decision of the board is *affirmed*.

### DISSENTING OPINION.

DE VRIES, Judge: I am unable to concur with my colleagues herein.

This is one of several appeals constituting test cases seeking construction of the last portion of paragraph I of section 3 of the tariff act of 1913, hereinafter quoted.

While in the briefs and at the oral argument several minor issues were raised, I think these either answered by the record itself or such as discussion and particular determination would not affect the conclusion.

At the threshold of orderly inquiry we are met with the challenge by the Government, appellee here, that the Board of General Appraisers was without jurisdiction of the case, and upon that issue the board held with the Government. Preliminarily there should be borne in mind the distinction between jurisidiction to *hear and determine* issues of law or fact and jurisdiction or power to *enforce a decree* based upon such determination. If I read correctly the conclusion of the board it was apprehension as to its powers in the latter respect rather than its interpretation of the law which controlled decision. The majority opinion herein takes the broad view that the board has neither jurisdiction to hear and determine nor to enforce action in the premises. In statutory tribunals of special jurisdiction, the powers of which are derived solely from and are limited strictly by the organic law of their creation, such powers are not always coincident. Oftentimes the power of enforcement of their own judgments and decrees is not granted such tribunals by Congress. There is sound reason for this under constitutions like ours, the fundamental principle of government under which is the separate and independent powers of the judicial, legislative, and administrative branches thereof, for the reason that the contrary might lead to conflict between these coordinate divisions of the public service. Notable of such cases are those of the class before us wherein the decision of the tribunal of judicial functions concerns the duties and performances of an administrative division of the Government. It is neither strange nor unseemly that in such instances Congress should create tribunals empowered to hear and determine cases, construing facts and the law, to be administered by a coordinate branch of the public service, without adding the power in the judicial branch to enforce its decisions. Congress, no doubt, under such conditions, assumes that each as well as the other department of the Government will perform its duties in due and full observance of the law and official obligation; and, that where Congress has confided the interpretation or construction of a law to one tribunal, and such has in a particular case been invoked and had, that there is no controlling reason for a power of mandate, the decision being addressed to sworn officials of another branch of the Government entrusted with enforcement of the law as construed by such judicial tribunals. These officials are equally responsible for and observant of their official conduct under the obligations of their official oaths and are without interest, save that the rights of the citizen and taxpayer shall be administered according to the law as interpreted by the legally constituted tribunals of due jurisdiction.

Herein, as in all other cases, the *statute as construed* is the warrant and command of action. Such is far different from decrees concerning private interests moved solely by the extent of that interest and uncontrolled by the obligations of public duty and official oaths and bonds.

Accordingly, this being a case concerning the performance of pre-scribed statutory duties of public officials, we are to ascertain not necessarily that there is an *enforceable* jurisdiction in the board, but whether or not there is a jurisdiction to *hear* and *determine* the rights and duties of the respective parties litigant. Having duly so heard, determined, and declared the law, its enforcement may, without dis-credit. to either, but with equal credit to both, departments of the Government, reside in the obligation of official duty, the statute as construed being the mandate of performance. The power of the Board of General Appraisers, therefore, to themselves "compel" per-formance by the Secretary of the Treasury or collector of action decreed by the board is not necessary to their exercise of jurisdic-tion to hear and determine the law and facts governing either in a particular case.

Bearing in mind this particular fundament, examination of the issues will be facilitated by adverting to the enactment designed to prevent, and a brief résumé of, the evils complained of and a review of the defined and adjudged powers of the adjudicating tribunal. In so far as immediately pertinent, the statute is the last portion of paragraph I of section 3, customs administrative act of 1913, reading:

The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final. decision on reap-praisement, and it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his directions with a statement of his conclusions and his reasons therefor.

The reason for the enactment, and I think correct interpretation of its intended method of operation, are correctly and succinctly set forth in the Government's brief as follows:

Paragraph I imposes heavy additional duties upon merchandise which is entered at less than its market value. Often an importer confronts a dilemma. Assume that on an initial entry the local appraiser advances the value over the entered value and the importer appeals to reappraisement. While that appeal is pending and the question of market value is still unsettled, the importer makes a second entry of similar merchandise. He does not know at what value to make the second entry. If he enters at the value he used on the initial entry, he may incur additional duties. If (not using the privilege given by paragraph I) he enters at the advanced value put on the initial entry by the local appraiser, the importer has to pay duties on that

value even though on the initial entry he subsequently sustains his contention by a final decision on reappraisement. In short, by entering at the advanced value he may pay more duties than he ought to pay. To relieve his embarrassment paragraph I provides another course for him. Under that he may make his second entry at the higher value and file therewith his certificate that he has advanced to meet the advance made by the appraiser on the similar first entry. By so doing he places himself in a position to get the benefit of the test case. If he loses the test case he has avoided the additional duties he would have incurred had he made his second entry at what he believed to be the market value. If his contention in the test case be sustained, the Secretary of the Treasury will direct that duty be assessed on less than the entered value.

The material facts of the instant case epitomized from the record are that the first importation was entered at the invoice value or. amount, raised by the local appraiser 20 per cent, and, for lack of further appeal by either party, finally fixed by a general appraiser at 5 per cent advance over the invoice value or amount. Pending that final appraisement by the general appraiser, and, upon a second importation of similar goods, the importers entered them at 20 per cent advance, duly certifying at the time of entry that they were so entered "in order to meet advances made by the appraiser" in the first or test case, and, further certifying: "We hereby certify that the entered value is higher than the foreign market value to the extent of the above-mentioned addition" (20 per cent). The importers likewise appealed the second case and the general appraiser made advance therein also of 5 per cent above the invoiced value or amount which, also for want of appeal by either party, became final. On application of the importers to the Secretary of the Treasury for refund under the provisions of said paragraph I the Secretary, denying such, wrote the collector stating as his sole ground of denial as follows:

Inasmuch as the contention of the importers was not sustained as to market value, the department must deny their application for a reduction of entered values.

Adding:

You will therefore liquidate entries Nos. 39843 and 43051 on the basis of the entered values.

A later letter from the Secretary was of substantially the same effect, the sole and only ground of denial being that the importers' "contention" in the first case had not been sustained within said paragraph I. No express finding as to the importers' good faith, diligence, or inquiry was had or communicated to the collector.

That the conception of the majority of the record and tendered issues may be accurately stated and fully presented, I quote therefrom as follows:

It appears that the fundamental difference between the interpretation which the Secretary places upon these provisions and that adopted by the importers relates to the requirement in the act that the Secretary shall grant relief thereunder only in cases wherein "the importer's contention shall subsequently be sustained by a final

decision on reappraisement." The importers claim that the so-called "contention" intended by the act is simply the statutory contention which importers must make when they appeal for a reappraisement of merchandise, namely, that they "deem the appraisement thereof too high." They claim that this contention should be held to be "sustained" whenever the final reappraisement discloses that the value as advanced by the appraiser is too high, even though the reappraisement may not sustain the precise entered value of the merchandise. On the other hand, the Secretary defines the "contention" aforesaid to be the valuation which the importers place upon the merchandise when they enter it for duty. The Secretary, therefore, holds that importers can not be entitled to the relief provided by the paragraph unless the final appraisement exactly sustains the entered value thereof.

In the present case, accordingly, the Secretary refused to direct the collector to assess duty upon an amount less than the entered value of the merchandise, but on the contrary instructed him to assess duty upon the full entered value thereof. This instruction, of course, did not arm the collector with any new authority in the premises, but simply required him to perform whatever duty was imposed upon him by statute in the absence of special instructions in behalf of the importers. Under these circumstances the collector was bound by the letter of the law, at least, to assess duty upon the entered value of the merchandise, and this he did.

The importers contend that the Secretary was in duty bound, under the circumstances, to direct the collector to assess duty upon only the appraised value of the merchandise; that the record discloses that he refused to perform this duty because he misinterpreted the law as expressed in the paragraph; that the necessary facts were before the board and are now before the court to show that the importers were entitled of right to such a direction from the Secretary, those facts being the similarity of the several importations, the appraiser's advance and the appeal to reappraisement in the first case, the importers' advance and certificate at entry in the second case, the final decision upon reappraisement sustaining the importers' contention, and also good faith, due diligence, and inquiry upon the part of the importers; and that, these facts appearing, the board should have sustained the protest notwithstanding the refusal of the Secretary to issue the statutory directions to the collector in the premises, and that the court should now accordingly reverse the decision of the board since it failed to sustain the protest.

We think, however, that the provisions of paragraph I, above quoted, were designed by Congress to vest in the Secretary the sole and exclusive authority to direct assessment upon an amount less than the entered value of the merchandise, and that a refusal by him in any case to direct such an assessment is not reviewable by the board or this court upon an appeal from the collector's assessment in such case.

I can not concur fully in this recital in so far as it relates to the claims of the importers upon this appeal. It is true that they, among other matters, pray for an order of this court directing reliquidation upon the appraised value of the merchandise, but I do not discover any claim upon their part that they "were entitled of right to such a direction from the Secretary." It appears to me rather that the importers' main contention was and is that the Secretary's action was void, that consequently the collector's original liquidation was void, and they therefore ask that this court direct liquidation upon the appraised value of the merchandise. It is my view that the Secretary's action was void and it is within the board's jurisdiction to so declare. Having so determined the law of the case I do not, however, agree that the importers are entitled to the order of reliquidation at

the appraised value, but are entitled to *valid* action upon their petition by the Secretary, in which undoubtedly he would proceed in accordance with the final decision of the tribunal established by Congress to declare such.    It is beyond my slightest conception that, after litigating the question to final decision, either the collector or Secretary of the Treasury would for a moment entertain the slightest inclination to defeat that decision by nonaction or action contrary to the duly declared rule of action regardless of any power of, or issuance of, mandate.

It is seriously controverted whether or not the action or nonaction taken by the Secretary of the Treasury under paragraph I was or was not one of the facts actually or necessarily affecting and thus one of the various factors upon which the collector based his decision.

The Government strenuously insists that the thing sought to be reviewed is in fact a decision of the Secretary of the Treasury, and that the particular decision was not a factor upon which the collector based his liquidation.

It may be true as the Government asserts that upon this record the concluding language of the Secretary's letter, "you will therefore liquidate entries Nos. 39843 and 43051 on the basis of the entered values," was not a *direction* to the collector, and that the collector did not so regard or act upon it, but acted in behest of the statute itself, as indicated by the phrase of his letter to the general appraisers stating that he acted "as required by paragraph I, section 3, act of 1913," and, therefore, that the Secretary's action was not a *direction* as to liquidation.    Nevertheless, this assumed state of facts does not free the collector's liquidation or decision of any invalidity by reason of its execution during the pendency of the said proceedings before or before valid action upon the importers' petition by the Secretary. If this were true and the collector, voluntarily or accidentally, while the matter was pending before the Secretary, or before legal action by the Secretary, precipitated liquidation and thereby cut off the importers from their statutory rights, such liquidation was a denial of a statutory right of the importers, and in violation of the statutory right afforded. . Illegal and void action are no action.    Being advised, as he must have been, by the papers of the pendency or possible pendency before the Secretary of such relief proceedings, it would seem clear that any action by the collector before *valid* action by the Secretary, before the importer had "his day in court," so to speak, and before abandonment of his petition or decision thereupon by the Secretary of the character guaranteed him by the statutes, *any* liquidation by the collector must be invalid and void, in that it was made in deprivation of a statutory right of the importers, which, if duly accorded by the Secretary, may have compelled different decision by the collector.    It can not be that where Congress has ex-

pressly granted an importer a mode of relief from an otherwise neces-
sary decision of a public officer, and the importer having duly invoked
that relief, that such officer can by a judgment, which that relief may
have modified, proceed to execution against him or his property prior
to action upon the invoked relief.   A construction that would permit
such a denial or defeat of a statutory right is not to be tolerated.
The language of the Supreme Court in Campbell *v.* United States (107
U. S., 407, 410–413) in such a status would be precisely appropriate:

> It would be a curious thing to hold that Congress, after clearly defining the right of
> the importer to receive drawback upon subsequent exportation of the imported
> article on which he had paid duty, had empowered the Secretary by regulations,
> which might be proper to secure the Government against fraud, to defeat totally the
> right which Congress had granted.   If the regulations of themselves worked such a
> result, no court would hesitate to hold them invalid as being altogether unreasonable.
>
> But the regulations in this case are not unreasonable, nor do they impose any obstacle
> to the full assertion and adjustment of plaintiffs' right.   It is the order of the Secretary
> of the Treasury forbidding the collector to proceed under these regulations or in any
> other mode which is the real obstacle.   Is that order a defense to this action?   Can
> the Secretary, by this order, do what he could not do by regulations—repeal or annul
> the law?   Can he thus defeat the law he was appointed to execute, by making regula-
> tions, and then, by ordering his officers not to act under them, and not to act at all,
> place himself above the law and defy it?
>
> \*        \*        \*        \*        \*        \*        \*
>
> Neither act of Congress nor any rule of construction known to us makes the claim-
> ant's right, when the facts on which it depends are clearly established, to turn upon
> the view which the collector, or the Secretary, or both combined, may entertain of
> the law upon that subject, and much less upon their arbitrary refusal to perform the
> services which the law imposes on them.

In either view, then, the Secretary's decision becomes and is a
factor going to the validity of the collector's liquidation, and, until
there has been a valid decision by the Secretary, there can be no
valid liquidation or determination of the correct and legal *amount* of
duties.

I am of the opinion that the *due exercise* of the powers conferred
by this provision upon the Secretary is not reviewable by the board,
but, if in the exercise thereof the Secretary has either "transcended the
powers conferred by statute" *or* "has proceeded on a wrong principle
contrary to law" (United States *v.* Passavant, 169 U. S., 18, 21),
in which latter case he thereby ousts himself of jurisdiction, in either
case his decision is without jurisdiction and void.

Paragraph I is an express statutory power conferred upon the
Secretary of the Treasury.   By due petition of the importer juris-
diction is vested in the Secretary in certain cases *upon certain pre-
scribed conditions* to relieve an importer against the duties accruing
by law upon and by reason of his own entry.   The history of tariff
legislation shows that an urgent demand for such a law relieving
importers against entered values in certain cases had been pressed
upon the Congress for many decades.   Various expedients to that

end had been suggested, tried, and abandoned, either as opening the door to fraud, or, as shown by the Revised Statutes (secs. 3012½ and 3013) and the amending limiting act of March 3, 1875, itself further restricted to clerical error cases by section 24 of the act of June 10, 1890, by too liberal administration. After about 23 years of petition Congress in the current tariff act, after considering various proffered measures, again embarked upon a policy of broader relief in this behalf by adopting paragraph I, cautiously in part reinvesting this right, taken from the Secretary almost a quarter of a century before, *upon expressed conditions*. The last sentence of paragraph I manifests the apprehension of Congress by requiring, whenever the Secretary grants relief thereunder at least, he shall "accompany his directions with a statement of *his conclusions* and his *reasons* therefor," no doubt in order to insure that sound reason should obtain and caprice and favoritism be avoided. The history and framework of the paragraph therefore enjoin strict adherence to its expressed conditions that its interpretation should respond to that expressed will of Congress.

The language of the paragraph expresses the several conditions of its application. For convenience of reference they may be designated as follows:

(1) *There must have been* a previous entry of goods advanced by the local appraiser and protested to reappraisement by the importers.

(2) *There must have been* a second importation of similar goods entered at a value which has been certified by the importers to be higher than the dutiable foreign market value thereof in order to meet advances made by the appraiser in the first or test case then pending on appeal to reappraisement.

(3) The importers' "*contention*" in the first case must have been subsequently "*sustained*" by a final decision on reappraisement.

(4) *It shall appear* that the action by the importer on entry was taken in good faith after due diligence and inquiry upon his part.

(5) The statute also prescribes that the Secretary must accompany his directions with a statement of his conclusions and his reasons therefor. (Whether or not compliance with (5) is a condition precedent to liquidation by the collector and therefore herein sufficiently complied with is not here in issue or necessary of decision.)

As decision is necessarily controlled by considerations appertaining to subdivision (3), discussion of obvious questions arising as to the other parts of the paragraph will, in the economy of space, be avoided except as reference may be made thereto by way of illustration.

The important inquiry at once presents itself, Are the conditional requirements "that the contention of the importer shall have been

sustained," such as must be ascertained and determined by the Secretary, and, on review, be by the record so shown; or, will it suffice on review that the record show their existence without such determination by the Secretary?

The majority opinion assumes the statute requires the Secretary to determine and decide whether or not the importers' contention has been sustained and that, therefore, this decision upon that point is nonreviewable by the board and this court. It may well be doubted, I think, whether Congress confided this as a matter of determination to the Secretary, or made it a condition precedent to the exercise of the grant to him to determine the good faith of the importers, so granted only in cases where and upon the condition and when the importers' contention had been sustained, that condition being a legal one, final determination of which is for the courts. Certainly whether or not the importers' contention had been sustained is not a quasi judicial question, as asserted by the majority opinion, but a strictly legal one, and therefore not within the rule invoked by the majority In any view it is at least a part of the *prescribed mode of procedure* by the Secretary, if not a condition precedent to exercise of any authority under the statute by him, and therefore equally a legal jurisdictional requirement.

Preliminarily it may be said that the discussion should be confined to the questions as presented by this record and not be extended to one that *might* be presented by a different record. Apropos of this it should be particularly borne in mind that the Secretary has *expressly stated* the grounds of his action. It oftentimes happens that the decision of an officer or court which otherwise might be held conclusive and as such nonreviewable, as supported by the presumption of correctness, is by virtue of some recital or averment as to jurisdictional matters rendered the subject of collateral review and reversal. In the presence of jurisdictional averments no presumptions will be indulged in support of the judgment, but it must stand or fall solely upon the strength of the record recitals. In Galpin *v.* Page (18 Wall., 85 U. S., 350, 366), the doctrine is concisely stated:

But the presumptions, which the law implies in support of the judgments of superior courts of general jurisdiction, only arise with respect to jurisdictional facts *concerning which the record is silent.* Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. *They have no place for consideration* when the evidence is disclosed *or the averment is made.* When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and *it will not* be presumed that there was other or different evidence respecting the fact, *or that the fact was otherwise than as averred.*

See also Black on Judgments (vol. 1, 2d ed., sec. 275).

In view, therefore, of the express recital by the Secretary of the reason for his decision, a different case is presented than one involv-

ing solely a discussion of the abstract statutory requirements.  We are here called upon to adjudicate a case wherein the acting official recited in his decision the grounds thereof.  Such a case can not be disposed of properly by a mere discussion of the statutory requirements without justifying the conclusion reached upon the record as presented.

The department action or decision as more markedly typified by its letter of July 28, 1914, is readily separable into its elementary parts: .

(1) His finding of facts:

It appears that the appraiser added 20 per cent for market value on the former entries referred to, and that on appeal to reappraisement the general appraisers sustained an advance of only 5 per cent on the entered value, which was also the invoiced value.

(2) His conclusion of law from said facts:

Inasmuch as the contention of the importers was not sustained as to market value, the department must deny their application for a reduction of entered values.

(3) His action on proceeding: His declaration of the legal effect of that conclusion, or his mandate, or direction perforce of that conclusion of law, "you will therefore liquidate entries Nos. 39843 and 43501 on the basis of the entered values."

It seems clear that, *if* the Secretary's conclusion of law that "the contention of the importers was not sustained" was an erroneous one, unquestionably, then, when he for that reason ("*therefore*") denied the importers' application and declared, if he did not direct, a certain liquidation proper, he either "proceeded on a wrong principle contrary to law" by not following the prescribed procedure or "transcended the powers conferred upon him" by acting upon a state of conditions not prescribed by the act of Congress.  In either case I am of the opinion the case is clearly within and ruled by a long line of decisions of the Supreme Court typified by and concisely expressed in United States *v.* Passavant (169 U. S., 18, 20):

Under section 7 the collector is to determine for himself the question of what is the invoice value of the goods, and in doing this he may add such charges as he considers to be dutiable, but his decision in this respect is not in the nature of an appraisement, and may be attacked by protest.  And while the general rule is that the valuation is conclusive upon all parties, nevertheless the appraisement is subject to be impeached where the appraiser or collector *has proceeded* on a wrong principle contrary to law *or* has *transcended the powers* conferred by statute.  Oberteuffer *v.* Robertson (116 U. S., 499); Badger *v.* Cusimano (130 U. S., 39); Robertson *v.* Frank Bros. Co. (132 U. S., 17); Erhardt *v.* Schroeder (155 U. S., 124); Muser *v.* Magone (155 U. S., 240).

The logic and authority of the majority opinion appears to be aptly expressed in the following passage:

A reading of the paragraph discloses that the authority which is thereby invested in the Secretary is not formal or ministerial in character but is quasi judicial.  In the exercise of it the Secretary is called upon to inquire whether a proper certificate

has been filed by the importers at entry, whether a similar case was then pending upon appeal for reappraisement, whether the importers' "contention" therein has subsequently been sustained by a final decision upon reappraisement, and whether the action of the importers at entry was taken in good faith and after due diligence and inquiry upon their part. This requires an examination by the Secretary into the facts and circumstances of the case, and a quasi judgment upon the questions just enumerated. Decatur *v.* Paulding (14 Pet., 497, 514); United States ex rel. Dunlop *v.* Black (128 U. S., 40, 48). The act does not provide for an appeal from a refusal by the Secretary to direct an assessment in the exercise of this authority, nor is there any provision for preserving or reviewing the evidence upon which the Secretary may have acted in such a case, nor can it be doubted that Congress possessed the power to entrust this authority to the Secretary without granting an appeal from his decision in such cases.

No distinction therein is made between the *legal* condition which Congress has prescribed *shall exist,* to wit, the contention of the importers having been sustained, and the *facts* Congress prescribes must be certified by the importers and those which "shall appear" to the Secretary. They are all in that opinion classed together as requiring "an examination by the Secretary into the *facts and circumstances* of the case, and a quasi judgment upon the questions just enumerated." This view loses sight of the very marked and always controlling distinction observed by all the authorities, as to the conclusiveness of decision, in the determination of a matter of law as distinguished from a matter of fact when decision is confided to an administrative officer by Congress. The latest pertinent expression at hand was by the Supreme Court in American School of Magnetic Healing *v.* McAnnulty (187 U. S., 94). Therein the Revised Statutes provided (sec. 3929), "the Postmaster General may, upon evidence satisfactory to him that any person is engaged in * * * any other scheme or device for obtaining money through the mails by means of false or fraudulent pretenses," etc., exclude letters from the mails, etc. After full hearing and finding "upon evidence satisfactory to him" that the defendant was engaged in such practices by the Postmaster General such an order was made. Direct action was brought for permanent injunction. The right of the courts to review the action of the Postmaster General under such an investment by Congress was contested. The Supreme Court held that as the determination of what was or was not a "fraud" was a decision of a question of law such a decision was reviewable, saying:

That the conduct of the Post Office is a part of the administrative department of the Government is entirely true, but that does not necessarily and always oust the courts of jurisdiction to grant relief to a party aggrieved by any action by the head or one of the subordinate officials of that department which is *unauthorized by the statute* under which he assumes to act. The acts of all its officers must be justified by some law, and *in case an official violates the law* to the injury of an individual the courts generally have jurisdiction to grant relief.

\* \* \* \* \* \* \*

*The facts, which are here admitted of record, show that the case is not one which by any construction of those facts is covered or provided for by the statutes under which the Postmaster General has assumed to act, and his determination that those admitted facts do authorize his action is a clear mistake of law as applied to the admitted facts, and the courts,* therefore, must have power in a proper proceeding to grant relief. Otherwise, the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law and is in violation of the rights of the individual. Where the action of such an officer is thus unauthorized he thereby violates the property rights of the person whose letters are withheld.

Whether or not the importers' "contention was sustained" seems so obviously a question of law that discussion seems trite.

Equally it would seem that the assumption in the majority opinion that "the act does not provide for an appeal from a refusal by the Secretary to direct an assessment in the exercise of this authority, nor is there any provision for preserving or reviewing the evidence upon which the Secretary may have acted in such a case," is without support in principle in the state of the law. The consideration is an important one, as it is the controlling point of the decisions relied upon and cited by the majority. The statement made, while literally correct, assumes without discussion the principal point in the case whether or not there is a legally constituted jurisdiction to review the acts of the Secretary herein to determine whether or not he herein acted beyond the law. It was, of course, unnecessary for Congress to specially provide for judicial review of the Secretary's acts herein if such remedy then existed. I think Congress has provided such.

The provision in question, paragraph I, was but one paragraph and part of the customs administrative act. It related to and its exercise affected the amount of duties chargeable upon imported merchandise. Congress in a subsequent paragraph of the same act (par. N) vested in the Board of General Appraisers jurisdiction upon protest to hear and determine all questions as to the rate and "amount" of duties "chargeable" upon imported merchandise. And, while it is true as said in the majority opinion that paragraph I commands the collector that he "shall not in any case take a less amount of duty than the entered value," that provision is but a part of and must be read in connection with other parts of and the whole customs administrative act. This act and all parts thereof, as said by the Supreme Court in Nichols *v.* United States (7 Wall., 74 U. S., 122, 130), "constitute a *system,* which Congress has provided for the benefit of those persons who complain of illegal assessments of taxes and *illegal exactions of duties.*" All parts thereof must be read together, paragraph I with paragraph N, wherein it is provided that the importer "if dissatisfied with such decision" of the collector as to the rate or amount of duty chargeable may protest to the Board of General Appraisers, whose "determination shall be final and con-

clusive * * * and the record shall be transmitted to the proper collector, * * * *who shall liquidate the entry accordingly,"* that is, as he shall be commanded. When protest is filed, then, the provisions of paragraph I are superseded by those of paragraph N and the collector thereafter reliquidates not by the command of the law of paragraph I but of the mandate issued in pursuance with paragraph N. This is true in all protest cases, and, were it not true, perforce of paragraph I the board would in all cases be powerless to order reliquidation other than at the entered value. An exception is thus made by the subsequent paragraph and the earlier provisions that duty "shall not, however, be assessed in any case upon an amount less than the entered value," in paragraph I upon and in cases of protest, yields to and is superseded by the provisions of paragraph N commanding, after final protest decision, that the collector "shall liquidate the entry accordingly." The fact that the final decision upon the protest may not *fix* the "amount" of duty to be reliquidated, but leaves that to await further determination by the collector does not alter the case, even though that determination may have to await some legal action by the Secretary of the Treasury. Perforce of paragraph N whenever protest is filed paragraph I ceases to bind the collector and he looks to paragraph N for his warrant of action.

The grant of power in the board upon protest to determine the correct amount of duties upon importations *is without limitation.* The act nowhere says that when an illegal amount levied is due to the Secretary's mandate, or any other excepting cause, the board is without jurisdiction, but the grant of power in the board is unlimited, whatever the cause or whoever causes an illegal amount of duties to be levied.

Upon due protest, challenging the amount of duty levied, the determination of the legal duty carries with it the power of inquiry and decision by the board as to all legal performances the result of which entered into and affected the amount of duties levied and covered by the protest.

That is precisely the view taken by the Supreme Court in United States *v.* Passavant (169 U. S., 16). The court therein read together the provisions of the customs administrative act of 1890, which is this act in all essential particulars, and held that while section 13 made reappraisements by a reappraisement board final and conclusive, nevertheless section 14, providing for protest before a classification board as to the "amount" of duties, vested jurisdiction in the latter to inquire into the *legality* of the proceedings of the reappraisement board whose decision was made by the very act "final and conclusive."

It follows that it is a pertinent and necessary inquiry by the Board of General Appraisers, before whom is duly challenged the "*charge-*

*able" "amount"* of duties upon an importation, in the customs administration of which the importers have invoked the provisions of paragraph I, whether or not valid decision by the Secretary thereupon has been had and duly observed by the collector.

Did the action or nonaction of the Secretary herein affect or enter into the legally chargeable duties?

I think the answer to that question must be in the affirmative. By paragraph N of section 3 of the customs administrative act as amended in 1913 the Board of General Appraisers is vested with jurisdiction of all appeals from decisions of collectors of customs "as to the rate and amount of duties chargeable upon imported merchandise." There is here no issue as to the rate of duty; there is here issue as to the amount of duty "chargeable." The merchandise was invoiced at 1,655.40 francs, entered at 1,986.48 francs, and appraised at 1,738.17 francs. The amount of duty "chargeable" depends entirely upon which of these items is the proper basis of assessment.

If I am correct in this view it renders inapplicable the reasoning and authorities cited in support of the majority opinion, which assume and are applicable solely in cases where *no review is provided by law* of the power granted the Secretary. Thus, in Decatur *v.* Paulding (14 Pet., 39 U. S., 497, 515), relied upon, the court expressly pointed out that it was reviewing a mandamus proceeding to compel strictly ministerial acts wherein no review was provided. The court said:

*If a suit should come before this court, which involved the construction of any of these laws, the court certainly would not be bound to adopt the construction given by the head of a department. And if they supposed his decision to be wrong, they would, of course, so pronounce their judgment. But their judgment under the construction of a law must be given in a case in which they have jurisdiction, and in which it is their duty to interpret the act of Congress, in order to ascertain the rights of the parties in the cause before them.*

The distinction was emphasized in United States ex rel. Dunlop *v.* Black (128 U. S., 40, 47), wherein the Decatur *v.* Paulding case was quoted with approval. These two are the cases relied upon by the majority opinion. I can better leave their interpretation to the words of Mr. Justice Taft, with whom concurred Mr. Justice Lurton and Mr. Justice Clark, in D. M. Ferry & Co. *v.* United States (85 Fed., 550, 556), stating:

The case before us is very like United States *v.* Black (128 U. S., 40, 9 Sup. Ct., 12). * * * The Supreme Court held that where Congress vested in an executive officer the power to hear and determine claims against the Government of the United States, *with no provision for an appeal to the courts*, his decision was final in so far as to prevent a direct review of the same by the proceeding in mandamus to compel the officer to act in accordance with the view of the law which the court might take. * * * The court, in United States *v.* Black, followed an earlier decision of Decatur *v.* Paulding (14 Pet., 497), and made very clear, by reason and authority, the distinction between the mere ministerial act of the executive officer, which may be controlled by the courts by mandamus, and an act in the performance of which an

officer is vested with quasi judicial discretion. * * * In Decatur *v.* Paulding (14 Pet., 497) it was expressly stated by the court that while, as between the United States and the pensioner, the Secretary of the Navy was the final tribunal for the construction of the statute, yet, *if the question were to arise between two litigants in such a way that the court would have jurisdiction over the controversy, the court would not feel bound to follow the construction of the Secretary.* And so, in this case, if by any possibility the question of the construction of this particular section 2984 were to come before the Circuit Court in a matter of which it had jurisdiction, it would not be bound to follow the construction of the Treasury; but the question here is whether, in a direct proceeding against the United States, and not in a suit of which the court otherwise has jurisdiction, the decision of the tribunal appointed by law can be reviewed by the court.

These decisions are express authority that where a review is provided by law of proceedings performed by special tribunals all judicial acts performed by such will be reviewed.

In my view the procedure of review established by paragraph N, part of the act in question, renders both the reasoning and authorities cited more conducive to the contrary than the view of the majority.

Aside from the Passavant case, supra, these principles have in numerous similar instances been applied to the same effect.

That long and uniform line of decisions by the Supreme Court to the effect that while the *decision* itself of appraisers and boards thereof in valuation or appraisement cases can not, by reason of their quasi judicial character *and the express statutes making them final and conclusive upon all the world,* be reviewed by a classification or law board of general appraisers or the courts, yet that the latter tribunals can inquire into such proceedings to ascertain if the appraiser in reaching appraisement decision had "transcended the powers conferred by statute" or "has proceeded on a wrong principle contrary to law," seems to me so nearly allied to this and so exactly in point as to the law of the case that the court should deem it controlling.

The judicial function so exercised is not the review of the *decision* of a quasi judicial officer. That principle as announced in Bates & Guild Co. *v.* Payne (194 U. S., 106, 108) and cases therein reviewed is without question, but differs vastly from a judicial examination of the record of the proceedings of such an officer to determine whether or not in reaching decision he failed to pursue the statute whereby he either "transcended the powers conferred" upon him or "proceeded on a wrong principle contrary to law" in reaching decision. The principle was early approved and adopted by this court in Maddaus *v.* United States (3 Ct. Cust. Appls., 330, 332; T. D. 32623), wherein it is said:

We do not think the added language in section 13 of the customs administrative law, as amended in 1909, concerning the finality of the decision of appraisers in reappraisement cases, changes the rule where either the "appraiser or collector has proceeded on a

wrong principle contrary to law or has transcended the powers conferred by statute," as declared by the Supreme Court in United States v. Passavant (169 U. S., 16, 21). The changed language of the statute is addressed to a review of "the decision" itself rather than to the jurisdiction of the board to render the decision. The injunction of the statute is against a review of the decision as a finding of fact, and not to the procedure of the board in acquiring jurisdiction to render the decision, which is a question of law. The statute entitles the importer, or the Government, to an appraisement by a single general appraiser or a board of general appraisers *proceeding according to law*. The decision thus had become final and neither the board nor this court can review the same. Until, however, the jurisdictional requirements of the statute have been complied with or satisfied there is no "decision" within the statute of a single general appraiser or a board of three general appraisers. The review sought, therefore, is not a review of the decision itself, but a review of the legal power of the general appraiser or board of general appraisers to render that which without such power duly exercised does not become the "decision" contemplated and made final by the provisions of the statute.

Application of that doctrine by the Supreme Court, wherein a protest before the Board of General Appraisers, on its classification or law side, though immediately directed at and' attacking the collector's liquidation or decision, raises an issue determinable by that board, and on appeal by the courts, wherein is involved the legality of some decision, order, regulation, or action of the Secretary of the Treasury, directly or indirectly affecting such liquidation or decision of the collector, is had as controlling in numerous decisions. United States v. Lucius Beebe & Sons (122 Fed., 762), Morrill v. Jones (106 U. S., 466), United States v. Whitridge (197 U. S., 135), Lenning v. Maxwell (3 Blatch., 125), Greely v. Thompson et al. (10 How., 51 U. S., 225, 234), Maxwell v. Griswold (10 How., 51 U. S., 241, 254), Tracy v. Swartwout (10 Pet., 35 U. S., 80, 95), Downs v. United States (187 U. S., 496), Marriott v. Brune et al. (9 How., 50 U. S., 619, 634), Earnshaw v. Cadwalader (145 U. S., 247, 259), American Sugar Refining Co. v. United States (1 Ct. Cust. Appls., 228; T. D. 31273), Tilge v. United States (1 Ct. Cust. Appls., 462; T. D. 31507), Morris European & American Express Co. (3 Ct. Cust. Appls., 146, 149), Loeb v. United States (1 Ct. Cust. Appls., 385), Maddaus v. United States (3 Ct. Cust. Appls., 330). And special attention is directed to an exceedingly able and pertinent decision of the subject by the late Judge Somerville, set out in United States v. Loeb (99 Fed., 723).

A precisely parallel course of decisions is those confirming jurisdiction in the board to review clerical error cases wherein Congress by section 24 of the customs administrative act of 1890 reenacted in the present act as paragraph Y of section 2, provides:

Y. * * * And the *Secretary of the Treasury is hereby authorized to correct manifest clerical errors* in any entry or liquidation for or against the United States, at any time within one year of the date of such entry, but not afterwards: * * *.

That jurisdiction was first exercised by the board in G. A. 184 (T. D. 10534), December 5, 1890, which decision was affirmed by the

United States Circuit Court at Chicago and acquiesced in ·by the Treasury Department September 10, 1891 (T. D. 11746). In 1894 the board, in G. A. 2575 (T. D. 14946), again reasserted this jurisdiction, saying:

It is perfectly clear to us that section 24 of the customs administrative act has no bearing on this case. That section confers on the Secretary of the Treasury general power "to correct manifest clerical errors in any entry or liquidation for or against the United States" at any time within one year of the date of entry. The provisions of the section show that the Secretary can exercise this authority for the purposes there mentioned, after final liquidation of the entry, even in cases where no appeal has been taken to this board from the collector's decision.

The authority to correct such errors is not vested in him as an exclusive power, and this point has been decided by the courts. The power conferred on the Board of General Appraisers by section 14 of said act to "examine and decide" all cases properly before them for decision necessarily carries with it the power to correct an obvious and manifest clerical error appearing in the papers which make up the case as a part of the record.

This jurisdiction was exercised by the board in In re Magnus, G. A. 184 (decided Dec. 5, 1890), which decision was affirmed by the United States Circuit Court for the Northern District of Illinois (per Blodgett, Judge) in August, 1891. That decision was acquiesced in by the Treasury Department September 10, 1891 (Synopsis 11745), on the concurrence of the Attorney General, who advised against appeal.

To the same effect is United States *v.* Benjamin et al. (72 Fed., 51) and Gillespie et al. *v.* United States (124 Fed., 106), both approved by this court in United States *v.* Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437), and frequently thereafter. Congress meanwhile has repeatedly reenacted this paragraph in hæc verba, thereby legislatively approving said interpretations.

The case of D. M. Ferry & Co. *v.* United States, supra, by Mr. Justice Taft may well conclude this branch of the case. It is to the effect that while Congress undoubtedly has the power to confer upon the Secretary of the Treasury quasi judicial functions without appeal or review, when such review is afforded by statute, the tribunal possessing such jurisdiction "would not be bound to follow the construc-. tion of the Treasury."

But it is held by. the majority that this protest challenges only the decision of the collector, whereas it is a decision of the Secretary of the Treasury that is, in fact, sought to be challenged.

That regulations of and directions by the Secretary of the Treasury can be questioned in actions directed against the collector and his· liquidations and that orders and directions of the Secretary are no defense for the collector in such cases has been so long established .and often adjudicated that the principle would seem to be stare decisis. In Tracy *v.* Swartwout (10 Pet., 35 U. S., 80, 95) the Supreme Court said:

The collector of the customs is a ministerial officer; he acts under the instructions of the Secretary of the Treasury, who is expressly authorized to give instructions as to the due enforcement of the revenue laws. Do these instructions, *when not given in accordance with the law*, afford a justification to the collector or exonerate him from the

payment of adequate damages for an injury resulting from his illegal acts? The Circuit Court, in their charge to the jury, did not consider these instructions as a justification to the defendant, and in this they were unquestionably correct. The Secretary of the Treasury is bound by the law, and although in the exercise of his discretion he may adopt necessary forms and modes of giving effect to the law, yet *neither he nor those who act under him* can dispense with or alter any of its provisions. It would be a most dangerous principle to establish, that the acts of a ministerial officer, when done in good faith, however injurious to private rights *and unsupported by law*, should afford no ground for legal redress.

The rule was reaffirmed in Greely *v.* Thompson et al. (10 How., 51 U. S., 225, 234) as follows:

The orders as well as the opinions of the head of the Treasury Department, expressed in either letters or circulars, are entitled to much respect, and will always be duly weighed by this court; but it is the laws which are to govern, rather than their opinion of them, and importers, in cases of doubt are entitled to have their right settled by the judicial exposition of those laws rather than by the views of the department. Marriott *v.* Brune (9 How., 634, 635). And though, as between the customhouse officers and the department the latter must by law control the course of proceeding (5 Stat. at L., 566), yet, as between them and the importer, *it is well settled that the legality of all their doings may be revised in the judicial tribunals.* Tracy et al. *v.* Swartwout (10 Pet., 95); United States *v.* Lyman (1 Mason, C. C., 504); Opinions of Attorneys General (1015).

In United States *v.* Beebe et al. (117 Fed., 670, 680) is found a recent concise statement of the principle:

With respect to section 2652 of the Revised Statutes, it may be observed that, although the collector must carry into effect all instructions of the Secretary of the Treasury relative to the execution of the revenue laws, yet as to third persons the legality of the collector's action is open to judicial review. Greely *v.* Thompson (10 How., 225, 234, 13 L. Ed., 397); Tracy *v.* Swartwout (10 Pet., 80, 95, 9 L. Ed., 354).

This case was affirmed by the Circuit Court of Appeals, First Circuit, in United States *v.* Lucius Beebe & Sons (122 Fed., 762, 769) with the following pertinent comment:

The United States raise a question of the jurisdiction of the Board of General Appraisers. On that point we need add but very little to what was said in the Circuit Court. The act of June 10, 1890, chapter 407 (26 Stat., 131), is the law which established this tribunal. The United States rest on the words "decision of the collector," found in section 14, and they claim that in the case at bar the "decision" was not that of the collector of Boston, but of the Secretary of the Treasury. This is a narrow construction of the expression, because the ultimate tribunal which reliquidated was not the Secretary, but the collector, so that at common law mandamus would lie only against the latter, and not against the former. This position, moreover, begs the question, because, *if the action of the Secretary was unlawful, as we hold it was, the collector could rest nothing done by him on that action, and whatever he did was his own.*

The United States rely on United States *v.* Klingenberg (153 U. S. 93, 14 Sup. Ct. 790, 38 L. Ed. 647). The opinion in that case is a very elaborate one, growing out of lack of compliance with the statutes on the part of the importer at the very origin of the transaction; that is, when he took his invoice. Several things said in it may be regarded as dicta; but, however that may be, United States *v.* Passavant (169 U. S. 16, 18 Sup. Ct., 219, 42 L. Ed. 644) must be held to broaden the view of the jurisdiction of the Board of General Appraisers when there is involved a mere

question of law, such as arises at bar on the letter of instructions from the Secretary to the collector.

A useful discussion of the general power of the courts to revise questions of law *arising on the face of the proceedings* by executive departments will be found in American School of Magnetic Healing *v.* McAnnulty (187 U. S., 84, 23 Sup. Ct., 33, 47 L. Ed. —). We also refer to Hyatt *v.* Corkran (188 U. S., 691, 23 Sup. Ct., 456, 47 L. Ed. —).

While these decisions were reversed by the Supreme Court in United States *v.* Whitridge (197 U. S., 135), it was upon an entirely different point than that raised, discussed or decided at circuit, and the well considered and supported doctrine of the courts below may well be deemed authority on the points decided.

Morrill *v.* Jones (106 U. S., 466) seems precisely in point. Therein the Secretary *by regulation*, in exercise of a power conferred by Congress upon him, "upon proof thereof satisfactory to the Secretary of the Treasury," directed collectors to admit only certain limited classes of stock. In a suit against a collector, the regulation of the Secretary was reviewed and held to transcend the powers granted by Congress and void. To the same effect is Bowling Green Storage & Van Co. *v.* United States (3 Ct. Cust. Appls., 309; T. D. 32588).

So, prior to the customs administrative act of 1890, protests on appeal were decided by the Secretary and the collector's reliquidation was just as much in obedience to a decision committed by law to the Secretary as here; nevertheless review of the Secretary's action was by suit against the collector. In Nichols *v.* United States (7 Wall., 74 U. S., 122, 130), it is said:

In the administration of the tariff laws, as we have seen, the Secretary of the Treasury decides what is due on a specific importation of goods, but, if the importer is dissatisfied with this decision, he can contest the question in a suit against the collector, if, before he pays the duties, he tells the officers of the law, in writing, why he objects to their payment.

The case of United States *v.* Whitridge (197 U. S., 135) is a conspicuous example of review of the legality of an order expressly confined by statute to the power of the Secretary of the Treasury in a case arising upon protest to the Board of General Appraisers. The court expressly refused to follow a technicality upon which decision could be rested that the Secretary's action was not reviewable, and under the assumption that it was such, on an appeal from protest against a collector's decision, reviewed and decided the case.

Likewise, the numerous cases reviewing reappraisement proceedings review and decide upon the legality of the proceedings of general appraisers and boards thereof, and that upon protest against the liquidation or decision of the collector *legally required to be made according to the board's decision.*

Finally, upon the question of the jurisdiction of the board and its power to review upon protest the legal acts of the Secretary when

exercised as affecting the rate and amount of duties upon imported goods:

(1) The customs administrative law is a code of laws all parts of which were enacted and must be construed together. Nichols v. United States (7 Wall., 74 U. S., 122, 130).

(2) Paragraph M of that act provides for valuation decisions upon appeal to general appraisers and boards thereof and that such decision by a board "shall be final and conclusive against all parties and shall not be subject to review in any manner for any cause in any tribunal or court." It is settled that by protest under paragraph N jurisdiction is vested in the board to review and decide whether or not in reaching such decision such boards proceeded according to law. United States v. Passavant (169 U. S., 16); Maddaus v. United States (3 Ct. Cust. Appls., 330; T. D. 32623).

. (3) Paragraph Y of that act provides that "the Secretary of the Treasury is hereby authorized to correct manifest clerical errors in any entry for or against the United States," etc. It is well settled that the Board of General Appraisers by Paragraph N is vested with jurisdiction on protest to hear and determine clerical error claims and the collector to reliquidate accordingly. United States v. Swedish Produce Co. (4 Ct. Cust. Appls., 223; T. D. 33437).

(4) Paragraph I provides that the collector shall determine for himself the invoice value and add thereto such charges as he may deem dutiable. Nevertheless it is well settled that the board by Paragraph N is vested with jurisdiction on protest to review this action of the collector. United States v. Passavant (169 U. S., 16).

If Paragraph N vests in the board the powers therein granted in unlimited terms to determine the *amount* of duty upon protest whenever and however and by whomsoever determined in all other provisions of the act, then why not also as to this provision of paragraph I? Certainly all parts of paragraph I are equally parts of the act, and accordingly must be read in connection therewith and as modified thereby. In my view the powers and jurisdiction of the board are plenary to review the proceedings of the Secretary of the Treasury under this paragraph to determine whether or not he acted in a case not authorized by law, or being authorized by law to proceed, proceeded contrary to law. Did he so act or proceed?

Did the state of facts found by the Secretary, from which he drew the conclusion of law that the importers had not sustained their "contention," and "therefore" denied their petition for relief, warrant that conclusion of law?

Concretely stated, given an invoice for $1, advanced by the appraiser to $1.20, protested by the importer (by protesting to reappraisement in form prescribed by the Secretary, reciting "we consider the appraisement * * * too high"), and, on reappraisement,

fixed at $1.05, *query*, can it be said as a matter of law that the importer's "contention" was "sustained?"

Diligent search has failed to discover authority of value in this ascertainment. We are left, therefore, to such guides of interpretation as are afforded. Primarily the legislative purpose is not obscure but made perfectly plain by the hearings before Congress and the words of the paragraph. (Tariff Hearings, Committee on Ways and Means, 1913, Vol. VI, pp. 6170–6171, 6179, 6217–6218, 6222, 6249, 6254–6256, 6323–6324.)

It was to relieve the importer from the legal consequences of his entry as visited by the statute where in good faith he believed the market value of goods other than the invoiced value. The hearings and the paragraph itself indicate the provision prompted by a situation of uncertainty as to market value and to give an importer time to try out this question on an initial invoice and entry before being bound and penalized by subsequent entries.

While the necessity for an enactment of the statute assumes such uncertainty or want of information, the Government's position requires of the importer to declare with certainty at the assumed time of uncertainty and to point out exactly by his protest the true market value at that time to the fraction of a cent. If Congress assumed the importer would be then possessed of that information this enactment is an idle one.

If the importers' contention is not sustained, unless the protests precisely state the value subsequently found by the board, there is, under all the circumstances of market value and its determination imposed upon him, a well nigh impossible task. The construction, therefore, would readily render the paragraph of little or no operation, and hence is not to be adopted.

Nor is that the theory of the long-established practice in reappraisement cases. The Secretary of the Treasury by regulation prescribes the contents of the protest or appeal to reappraisement by the importer that the appraisement is "too high," and of the collector that the appraisement is "too low." Customs Regulations of 1915 (arts. 586 and 587). Forms accordingly are prescribed. Under such for many years proof of any value by either party has been permitted and any range of values proven to and found by the board. As a matter of fact such an appeal to reappraisement vacates the appraisement appealed from and warrants an appraisement de novo wherein proof and findings are without limitation of range. So, proof of *any* less than the appraised value literally supports, and a finding of any less than appraised value is literally within, the declaration or protest that an appraised value is "too high." Comparison may be had of a complaint or declaration alleging due A from B of $120. Certainly proof would be admissible and a finding

and judgment sustained as within such pleadings that $105 or less were due. Even in criminal jurisprudence an indictment for grand larceny will support a conviction for petit larceny and so of indictments for many crimes, the greater involving the less. I am of the opinion, therefore, that the construction does not comport with or support the obvious purpose of Congress.

The paragraph being intended to relieve the importer of a conceded hardship, doubts as to its meaning should be resolved in his favor so as to effectuate the patent congressional purpose. United States v. Gavin & Co. (7 Ct. Cust. Appls., 292; T. D. 36804), Woolworth v. United States (1 Ct. Cust. Appls., 120–122; T. D. 31119), United States v. Hatters' Fur Exchange (1 Ct. Cust. Appls., 198–202; T. D. 31237), United States v. Matagrin (1 Ct. Cust. Appls., 309–312; T. D. 31406), United States v. Harper (2 Ct. Cust. Appls., 101–105; T. D. 31655), American Express Co. v. United States (3 Ct. Cust. Appls., 475–479; T. D. 33121), United States v. American Bead Co. (3 Ct. Cust. Appls., 509–515; T. D. 33166), Newhall et al. v. United States (4 Ct. Cust. Appls., 134; T. D. 33410).

It seems to me, therefore, that, as a matter of law predicated upon the facts, both as shown by the record and as found by the Secretary of the Treasury, the importers herein had sustained their contention and were entitled to a finding upon the facts of their application before liquidation by the collector; and that such statutory right must be deemed violated by a reliquidation or decision by the collector had before due decision of the importers' rights by the Secretary, they having duly invoked the provisions of said paragraph I.

In my view the liquidation by the collector is, for the reasons stated, void. The importers having sustained their contention before the board are entitled to a decision of their petition to the Secretary upon the merits. Before such is had, in my opinion, there can be no valid liquidation. The protest therefore should be sustained.